## EDWARDS et al vs. HALL et al.

1. STATUTES CONSTRUED : *When directory merely.*
   A statute which provides that Commissioners to locate a County seat shall meet at a time and place provided for, that a majority shall constitute a quorum to do business, that "the Commissioners may adjourn to some other place or time, and may adjourn from day to day until the business before them may be completed," is directory merely, and the Commissioners have the power to elect a chairman and empower him to fix the time of the next meeting.

APPEAL from *Prairie* Circuit Court in Chancery.

Hon. JESSE N. CYPERT, Circuit Judge.

*Rose,* for Appellants.

*Clark & Williams, contra.*

Opinion by WALKER, J.    L. D. Hall, Joseph B. Sanders, E. C. Clark, Richard Densdale, William D. Kerr, Joe H. Billinger and J. D. Upton vs. Asa O. Edwards, Charles B. Mills, Ham O. Williams and A. Boyd, D. N. White and J. G. McGown, *Commissioners.*

The plaintiffs, citizens and tax-payers of the County of Prairie, filed their complaint against defendant Edwards as County Judge, Charles B. Mills as Clerk, and Williams as Sheriff of said County, and the other defendants as Commissioners to locate the County seat of said County, for the purpose of enjoining them from removing their offices and the records of said County from Devalls Bluff, to Des Arc, the newly selected seat of justice for said county by the Commissioners.   A temporary injunction was granted, in Chambers.    When the cause came to be heard in the Circuit Court, the defendants demurred to the bill, two of the grounds of demurrer need only be noticed, which are, that the remedy of plaintiffs, if any, is at law, and that the facts set forth in the bill do not present a cause for equitable relief.

The Court overruled the demurrer and rendered a decree, that the defendants, and each of them, be perpetually enjoined from removing, or attempting to remove, the records, books, papers or furniture of the offices of Prairie County from Devalls Bluff; and that the Commissioners be restrained from exercising any power as such.   From which decree the defendants appealed.

The sufficiency of the bill is the only question properly before us.

By an act of the Legislature, approved 28th May, 1874, provision was made for the selection of three Commissioners to

locate the County Seat of Prairie County, and at the same time a vote to be taken for or against the removal of the County seat then located at Devalls Bluff. A majority of the votes cast were for removal, and defendants, White, Boyd and McGown, were elected Commissioners at an election provided to be held on the 30th June, 1874, for delegates to the convention. Upon the count of the vote it was ascertained that a majority of the votes were in favor of removal. It was made the duty of the Clerk of the County Court to issue certificates of election to the Commissioners elected, and to fix a day for the Commissioners to meet at Devalls Bluff for the purpose of entering upon the discharge of their duties as such. It appears from the allegations in the bill, as well as a copy of the report of the Commissioners, that they all met, and after consultation, failed to make a location of the County seat, and appointed another place and time for meeting, at which they all three again met, but were unable to agree; they fixed another time and place for meeting, and thereafter, and, after several adjournments, the Commissioners met and elected defendant White, one of their number, chairman of the committee, and "adjourned to meet on a day, and at such time, as the chairman should appoint." This proceeding was had in October, 1874. The chairman called a meeting of said Commisioners to meet at Hickory Plains, in said county, on the first Monday in February, 1875. On that day a majority of the Commissioners failed to attend, and White, the chairman, adjourned over to the 2d of February, and, for a like cause, until the 3d of February, 1875, at which time there was a majority of the Commissioners present, who then agreed to locate the County seat for said county at Des Arc, in said county, and made and filed their report, which was filed as required by the act passed for the purpose of making such location, and which it seems was the only act required of the Commissioners, to fix the location at the place selected by them, a majority of whom had power to act.

*Vol. xxx.—3.*

These are the affirmative acts of the parties, set forth in the bill, so far as relates to the Commissioners. As to the allegations against the other defendants, they are charged in the bill, as public officers, with an *intent and purpose* to remove the records of the county from Devalls Bluff to Des Arc, the place selected as a County seat by the Commissioners.

There are no direct charges of fraud against the defendants, nor are there any facts from which fraud may be presumed, unless it be the delay and repeated adjournments of the Commissioners, which may have arisen from an honest difference of opinion between the Commissioners. Each of them may have had a place in view, and have honestly believed it best for the interest of the county that his selection should be agreed to. Remarks have been indulged in by the draftsman of the bill, in effect, that one of the Commissioners had, during his canvass for election, committed himself to a particular location, and perhaps had not acted in good faith, but, whether true or false, it should have no weight in determining the questions at issue. It is unfortunately too often the case, that candidates for office, in electioneering for votes, make promises which they have not the power to fulfill, or, probably, which, at the time when made, they do not intend to perform. But, in all cases when Commissioners are qualified to act, and do act within the scope of the power conferred, their acts must be held valid. It may and sometimes is a misfortune to have dishonest or incompetent officers elected, but, until removed, whilst acting within the scope of their authority, their acts must be held as valid. The pleader seemed to have been conscious of this, and has rested his case for equitable relief upon these grounds: *First*—That the new Constitution is in conflict with the act of 28th May, and that at the time location was made, there was no law in force under which they could act, and, for that reason, the location was void; and,

*Second*—that if the act was not repealed, the Commissioners, by failing to make regular adjournments from time to time, had, before the time when they agreed upon a location, terminated their powers to act, and for that reason also the location was void.

Although we might dispose of this demurrer without proceeding to consider these questions, under the peculiar circumstances of the case, and, in deference to the expressed wish of counsel, we will proceed to consider, first, Was the act of May, 1874, repealed by the new Constitution, thereafter ordained and ratified?

Article 13, section 3, of the Constitution of 1874, ordains that "no County seat shall be established or changed without the consent of a majority of the qualified voters of the county to be affected by such change, nor until the place at which it is proposed to establish, or change such County seat to, shall be fully designated."

And in section 1, of the Schedule, it is provided that "all laws now in force, which are not in conflict or inconsistent with the Constitution, shall continue in force until amended or repealed by the General Assembly."

It is very clear that if the act of 28th May, under which the Commissioners acted, is not in conflict with the provisions of the Constitution that it is in force, and when we come to look at that act, we find it in perfect harmony with the Constitution. The Constitution requires the question to be submitted to the voters of the county for their approval, the act does the same. The Constitution also requires that before the removal takes place, the place to which it is proposed to make the change shall be designated. This has been done, therefore there can be no conflict between the Constitution and the act, and, as a consequence, the act is in force.

The second ground is, that the Commissioners, after their organization, which is admitted to have been regular, by failure to make regular adjournments, failed to perpetuate their power as Commissioners, and made the location of the County seat at Des Arc, at and after the time,when their power to act had ceased.

The provisions of the act of the Legislature are : That "the Commissioners shall meet at the Court house, in said county, on the day fixed by the Clerk, a majority of them shall constitute a quorum to do business, and a majority of a quorum shall prevail in all questions, and be deemed the judgment of the Commissioners." (The act then proceeds.) "The Commissioners may adjourn to some other place or time, and may adjourn from day to day until the business before them may be completed."

The alleged departure by the Commissioners from the provisions of the act is, that they did not adjourn from day to day, but that the adjournment was for a longer time, and that the Commissioners had no power to elect a chairman, and to delegate to him the power to fix the time for the next meeting of the Commissioners, and that, when they did this, it was in effect to adjourn without day, and was, in fact, a termination of their powers as such.

The determination of this question involves a construction of the act, and the nature of the several duties to be performed whether mandatory or merely directory. In the construction of powers and duties conferred by statute, the terms "shall" and "may" are, when it is necessary to preserve the general intent of the statute, used as convertible terms, and as meaning the same thing, but, in the ordinary sense, the one is imperative and obligatory, the other potential or permissive. So, in the section quoted, the word "shall" appears in all that relates to the first meeting, the organization of the board, and, as to the number competent to do business, "the Commissioners shall meet," "a majority shall

constitute a quorum," and "a majority of the quorum shall prevail." Whilst in regard to future meetings it says: "The Commissioners may adjourn to some other place or time, and may adjourn from day to day, until the business before them is completed."

Cooley, in his work on Constitutional limitations, page 74, says: "In respect to statutes, it has been long settled that particular provisions may be regarded as *directory* merely; by which is meant that they are to be considered as giving directions which *ought* to be followed, but not as so limiting the power in respect to which the directions are given, that it cannot be exercised without observing them."

Lord Mansfield would have the question, whether the provisions of a statute are mandatory or not, depend upon whether that which was directed to be done was or was not of the essence of the thing required. In the case of *The People* v. *Cook*, 14 Barber, 290, the Supreme Court of New York laid down the rule as one settled by authority, that statutes, directing the mode of proceeding by public officers, are directory, and are not to be regarded as essential to the validity of the proceedings themselves, unless it be so declared in the statute. In the case of *People* v. *Schermerhorn*, 19 Barber, 558, it is held that statutory requisitions are deemed directory when they relate to some immaterial matter of convenience rather than of substance.

*Clark* v. *Crane*, 5 Michigan 154, was a case where Commissioners were appointed to assess damages and report in forty days. The report was made after the forty days had expired. In the opinion of the Court this question was to be decided by ascertaining whether any advantage would be lost, or right destroyed, or benefit sacrificed, either to the public, by holding the provision directory. Mr. Cooley, after a review of numerous adjudicated cases, at page 77, says: "These cases sufficiently

indicate the rules so far as any of general application can be declared, which are to be made use of in determining whether the provision of a statute are mandatory or directory." "Those which are not of the essence of the thing to be done, but which are given with a view to the proper, orderly and prompt conduct of the business and by a failure to obey which, the rights of those interested will not be prejudiced, are not commonly to be regarded as mandatory; and, if an act is performed but not within the time, or the precise mode indicated, it may still be sufficient, if that which is done accomplishes the substantial purpose of the statute."

The application of this rule, which we think founded in reason and upon authority, when applied to the facts of the case before us, clearly makes all that part of the statute which provides for the meeting and adjournment of the Commissioners directory, not mandatory.

The acts of the Commissioners, whether by a quorum fixing time and place for meeting, or by the chairman empowered by the Commissioners to do the same, was in no wise of the essence of the act to be performed. It could be an act of no moment, either with the public or of individuals, whether the adjournment was from day to day, or after the lapse of several days, or was made by the chairman or a quorum of the board. The important act, the essence of the matter, was, did they meet at a time and place in the county, and did a quorum, when so met in deliberation, agree upon and locate the County seat. This was done and a full report filed, designating the place selected, showing what donations had been given, with recommendations as to public building—in fact every requirement of the statute was complied with. The report has been filed, and in view of the whole case as presented, we must hold that the County seat is, under the statute, legally located at Des Arc, and that the Court

improperly restrained the County Judge and officers of the Court from removing the public records of the county to that place.

It may be that the location is an injudicious one, such as a majority of the tax-payers and voters of the county do not approve. If such unfortunately should be the case, whilst it is to be regretted that injury (if any) is the result of the election of incompetent or dishonest Commissioners, their acts being in accordance with law, and the power conferred, must be submitted to. There is clearly no equity in the bill.

Let the decree be reversed, the injunction dissolved, and the case dismissed.