## BANKS *v.* WALTERS.

### Opinion delivered June 27, 1910.

1. USURY—SUFFICIENCY OF COMPLAINT.—A complaint asking to have an absolute deed declared to be a mortgage, which alleges that defendants, by seeking to collect rent in addition to the mortgage debt, are endeavoring to force plaintiff to pay more than is due them, is not a technical plea of usury; but is sufficient to cause equity to scrutinize the tranaction closely. (Page 504.)

2. MORTGAGES—AGREEMENT OF MORTGAGOR TO PAY RENT.—Where a vendee of land requested the defendants to advance him enough money ($90) to pay the balance of the purchase money, which the defendants agreed to do on condition that the vendee pay $1 per week rent and the $90 so advanced, and the title remain in the defendants until such sum is paid, the contract was in effect a mortgage, and the vendee was liable for $90 with interest, but not for rent. (Page 504.)

3. SAME—POSSESSION OF MORTGAGEES—EFFECT OF RECEIVING RENTS.—Where appellant was unable to pay for land which he had bought, and induced appellees to advance the money for that purpose, and agreed to repay the loan and interest and also pay rent, the agreement as to rent was without consideration, and the appellees should be treated as mortgagees in possession as to the rents so collected and be held to account therefor. (Page 504.)

4. PAYMENT—RECOVERY OF VOLUNTARY PAYMENTS.—Where a mortgagor voluntarily overpaid the amount of his debt, he is not entitled to recover the excess. (Page 505.)

5. USURY—AGREEMENT OF MORTGAGOR TO PAY RENT.—An agreement of a mortgagor to pay rent, in addition to paying the secured debt and 10 per cent. interest, is usurious and not enforceable. (Page 505.)

Appeal from Clark Chancery Court; *James D. Shaver,* Chancellor; reversed.

#### STATEMENT BY THE COURT.

The appellant states in his complaint that about January 26, 1905, he purchased from Paul T. Davidson a certain lot of land in the city of Arkadelphia, Arkansas, for one hundred dollars; that he paid ten dollars cash and executed his note for ninety dollars with interest at ten per cent. per annum from date until paid, due one year after date; that Davidson executed to appellant bond for title, which appellant had lost; that when the note was due appellant made an agreement with appellees whereby they were to pay the grantor, Davidson, the purchase money note of ninety dollars and interest, and were

to take the deed in their own names as security, and were to allow appellant to repay the ninety dollars and interest at the rate of four dollars per month; that appellees paid the ninety dollars with interest, and Davidson, at appellant's request, executed to them a deed to the lot; that appellant paid appellees one hundred and forty-seven dollars and fifty cents, which sum is $30.50 more than the note and interest, and that the surplus was paid through mistake; that when appellant had paid the amount of the note to appellees he demanded of them a deed to the lot, and they refused; that appellant, when he purchased the lot of Davidson, went into possession thereof and made improvements thereon costing $238; that he had been in continuous possession since his purchase; that appellees *falsely claim* that there is a balance due them for what they call "rent" to April 1, 1909, of $13.50, and the original note of $90, making a total of $103.50; that by making this claim appellees are seeking to take undue advantage of appellant, and to force him to pay more than is due them.

Appellant's prayer was that the deed from Davidson to appellees be declared a mortgage; that the mortgage be declared satisfied in full; that appellees be required to make him a deed; that he have judgment over for $30.50; and that the court grant him all equitable and proper relief.

The answer was simply a specific denial of all the allegations of the complaint. Appellees prayed no affirmative relief.

The testimony of appellant tended to prove that the contract between himself and appellees was as alleged in his complaint.

H. W. Austin, one of the appellees, testified as follows: "Plaintiff stated that he was going to lose the place, and wanted Walters and myself to pay Davidson and have the deed made to us. It was with the understanding between plaintiff, Walters, and myself that plaintiff would pay a dollar a week and the amount that we paid Davidson, that we agreed to pay off the debt due Davidson and take a deed to us. I would not have agreed to have paid the debt that plaintiff owed Davidson unless he had agreed to have allowed the deed to be made to us and agreed to pay rent on it at $1 per week until he was able to pay for the place. I knew that the plaintiff was not prompt in paying his obligations. When the plaintiff would pay

me the rent from week to week, I would give him a receipt, showing that it was for rent paid for that week. Since the deed was made to us by Davidson, Walters and myself have paid the taxes and kept the place insured, and it is now insured. When the year that we gave the plaintiff to pay the debt had ended, he had paid nothing but the rent, and was not able to pay the amount we had paid Davidson. At the end of the first year the plaintiff stated that he was running a restaurant on the place, and that he needed his money, and that he would just continue to pay rent at a dollar a week for another year, with the understanding that at the end of the year he could pay the amount we paid Davidson, and we would make him a deed to the place. At the end of the second year the plaintiff was not ready to pay the amount that we had paid Davidson, and stated that he would just go ahead and pay the rent until he could get the money or borrow it."

William Walters, the other appellee, testified as follows: "I went with him (appellant) to H. W. Austin, and the plaintiff agreed with me that if we would pay the amount due Davidson and give him a year to pay us what we paid Davidson he would pay us rent at the rate of $1 per week. There were no writings of any kind between plaintiff, Austin and myself. We had Davidson to make us a deed at plaintiff's request. We did not intend to beat him out of the place, and it was at his suggestion and his agreement that he would pay us rent at a dollar per week. When the first year was ended, we extended the time with the same understanding that he was to pay us a dollar per week rent. And the same agreement was made at the end of the second year."

Witness Davidson testified in part as follows: "He (appellant) came in company with the defendants, Walters and Austin, and told me to make a deed to them, the said defendants, conveying the said property. And I thereupon duly executed, acknowledged and delivered to the defendants a deed to said property. This took place on the 26th day of January, 1906. I do not remember what became of the $90 note, but my impression is that I gave the note to Banks, and he gave me the bond for title back. Neither Austin nor Walters, the defendants, said anything to me about buying the property or anything at all about the agreement they had with Banks, and I

simply made the deed to them at Banks's request, after I was satisfied that they would pay the deferred payment of $90."

Appellant testified that he did not surrender his bond for title. The court found that appellees were the owners of the lot in controversy, and that appellant "agreed to buy same from them and to pay $90 therefor."

The court decreed that, upon the payment of ninety dollars with interest within ninety days, appellees execute to appellant a deed; and, if appellant failed to pay the amount within ninety days, that a writ of possession go against him in favor of appellees.

Appellant duly prosecutes this appeal.

*Callaway & Huie,* for appellant.

The effect of a bond for title is to create a mortgage in favor of the vendor. 66 Ark. 167. Courts disregard the form and try to get at the real nature of the transaction. 47 Ark. 287; 9 Pet. 446.

*McMillan & McMillan,* for appellees.

The parties have the right to make their own contract. 65 Ark. 295. The defense of usury must be pleaded. 26 Ark. 356; 25 Ark. 195; *Id.* 258. And the burden of proof is on the party pleading it. 57 Ark. 556. The proof must be clear and convincing. 83 Ark. 36; 74 Ark. 241; 68 Ark. 162.

Wood, J., (after stating the facts). The complaint alleges that appellees falsely claim that there is a balance due them for what they call rent to April 1, 1909, of $13.50, and the original note of $90, making a total of $103.50; that by making this claim appellees are seeking to take undue advantage of appellant and to force him to pay more than is due them." While this is not a technical plea of usury, it is a sufficient allegation to cause a court of equity to scrutinize the transaction closely, in order to determine whether or not the parties seeking a benefit under it are attempting to enforce an illegal exaction.

Here, while appellees have not asked any affirmative relief, the court, after hearing the testimony, has treated the answer as if it were amended to ask affirmative relief, and granted to appellees a writ of possession against appellant unless he paid the ninety dollars with interest within ninety days. The court

thus treated the contract between appellant and appellees as a mortgage by appellant of the lot in controversy to appellees to secure the latter in the amount of money they had advanced to the former to enable him to pay for the lot. The court was correct in treating the contract as a mortgage, but erred in finding that the amount due appellees under it had not been paid. Appellees should be treated as mortgagees in possession as to the amount of rents they collected from appellant under the contract, and should be held to account to him for the amount of these rents. So treating them, the evidence shows that appellant has more than paid them the balance due on the ninety dollars with interest. Appellant, however, is not entitled to any judgment for the amount overpaid by him because as to this amount it must be regarded as a voluntary payment.

The evidence of appellees shows that they at all times recognized that appellant under the contract was the equitable owner of the lot. Their testimony tends to prove that they, at the request of appellant, took the deed from Davidson in their own name, intending to hold the title to the lot only as security for the amount of money they had advanced to appellant to pay for the lot. They at all times acknowledged the right of appellant, upon the payment of the purchase money advanced by them to him, to have deed to the lot.

The effect of the contract between appellant and appellees, as we view the evidence, was to substitute appellees for Davidson. Thy stood virtually in Davidson's shoes, and the effect of his contract was to make him a mortgagee holding the title to the lot, "subject to all the essential incidents of a mortgage." *Strauss* v. *White,* 66 Ark. 167, and cases cited. But they say that in the meantime appellant agreed with them that he should pay them a bonus of $1 per week as rent for the lot. There was no consideration for this agreement except the advance made by appellees to appellant of the ninety dollars and interest. Considered in this light, the bonus called *rent* would be nothing more nor less than a forbearance for the use of the ninety dollars and interest, and would render the contract void for usury. In *Scott* v. *Lloyd,* 9 Peters, 418, Chief Justice Marshall, speaking of the purchasing of an annuity or rent charge which was alleged to be a cloak for usury, said: "Yet if it is apparent that if giving it this form the contract will afford a cover which

conceals it from judicial investigation, the statute would become a dead letter. Courts, therefore, perceived the necessity for disregarding the form, and examining into the real nature of the transaction. If that be in fact a loan, no shift or device will protect it."

We are therefore of the opinion that appellant, having paid to appellees the amount due them, is entitled to his deed. The chancery court of Clark County erred in holding otherwise. The judgment is therefore reversed, and the cause is remanded with directions to enter a decree in accordance with this opinion.