Ernest McELROY *v.* C.C. GRISHAM, Bill Doshier, &
H.D. McCaleb, Individually and as Partners d/b/a/ BBS
Company, a Partnership

91-21                                    810 S.W.2d 933

Supreme Court of Arkansas
Opinion delivered June 10, 1991

*Stephen E. Adams, Ltd.*, by: *Stephen E. Adams*, for appellant.

*Adams & Nichols*, by: *Donald J. Adams*, for appellee.

JACK HOLT, JR., Chief Justice. The appellant/cross-appellee, Ernest McElroy, initially filed suit in the Boone County Chancery Court requesting equitable relief in the cancellation of a warranty deed, option contract, and deed for sale, as well as the quieting of title to the real estate in question. These requests were predicated, in part, on Mr. McElroy's allegations that the deed and contracts between him and the appellees/cross-appellants, C. C. Grisham, Bill Doshier, and H. K. McCaleb, individually and doing business as BBS Company, constituted a usurious scheme to loan money.

The chancellor found that the transaction was a usurious loan and that the deed from the appellant to the appellees "was in fact a mortgage" and issued his orders accordingly.

While appellant McElroy agrees with chancellor's finding that the transactions amounted to a usurious loan, he contends, on appeal, that the chancellor erred: 1) in determining the amount of interest he paid; 2) in refusing to award twice the amount of interest paid; 3) in refusing to award him attorney's fees; and 4) in awarding post judgment interest on the balance found due to the appellees.

On cross-appeal, the appellees contend that the chancellor erred in finding the transaction was a usurious loan and in denying their motion for summary judgment, in which they argued that a release signed by Mr. McElroy constituted a release and termination of the contract at issue.

We agree with the chancellor's findings that the transaction was usurious but reverse and remand as to his calculation of interest paid and the award of a penalty. We affirm the trial court as to the appellees' cross-appeal.

Mr. McElroy is engaged in the residential home construction business. In 1984 and 1985, he acquired a total of 104 acres of property for which he paid $238,357. In addition, Mr. McElroy

claims to have invested approximately $19,200 preparing the land for residential development.

By early 1987, Mr. McElroy was experiencing financial difficulties and contacted Mr. C. C. Grisham for help. He claims to have requested an initial loan of $100,000 from Mr. Grisham. This proposal was rejected, but, after lengthy negotiations, the parties agreed that Mr. McElroy would deed the property to Mr. Grisham and his partner, Mr. H. D. McCaleb, in exchange for $80,000. In addition, Mr. McElroy was to receive a contract for deed allowing him to repurchase the property for $120,000, of which $40,000 was to be paid in one year and the balance of $80,000 at the end of two years.

Mr. Grisham referred Mr. McElroy to Mr. Bill Doshier, an attorney, to complete the necessary legal work. Mr. Doshier was subsequently brought into the transaction as an equal partner with Mr. Grisham and Mr. McCaleb, which partnership was named BBS Company. At Mr. Doshier's suggestion, the contract for deed was changed to an option contract and, on February 13, 1987, the parties executed a warranty deed, in which Mr. McElroy conveyed the property to the appellees, and an option contract, wherein Mr. McElroy was given one year to exercise his option to repurchase the property; $40,000 to be paid at the time of purchase and $80,000 to be paid within a total of two years, interest free. The appellees disbursed $80,000 to Mr. McElroy through an abstract and title company and required Mr. McElroy to obtain release of over $120,000 in liens against the property.

Mr. McElroy claims that in February, 1988, before the expiration of the option contract, he approached the partnership about exercising his option. This is disputed by the appellees who claim that Mr. McElroy allowed the option contract to expire. In either event, the parties disregarded the option contract and executed a contract for deed on March 1, 1988, in which Mr. McElroy agreed to pay $125,000 for repurchase of the property (less three lots to be retained by the "sellers"). This price was $5,000 more than the "option price". Mr. McElroy was to pay $16,000 at closing and the balance of $109,000 in installments, at an annual rate of 10%, which was evidenced by a promissory note. The parties have stipulated that during the term of this agreement, Mr. McElroy made payments to the appellees total-

ling $45,195.

In April, 1989, Mr. McElroy was informed by the appellees that he still owed over $86,000 on the debt. He filed suit in the Boone County Chancery Court shortly thereafter.

Following trial, the chancellor entered two opinion letters in which he held that "the underlying and real purpose of this transaction was a loan to plaintiff in the amount of $80,000, and that since it was a loan, under its terms, it exceeded the lawful rate of interest." The court found that Mr. McElroy had repaid $45,195, of which $10,866 was interest, leaving $34,329 paid on the principal and $45,671 owing. This amount was offset by a penalty of $16,300, assessed against the appellees, which resulted in a final judgment of $29,371 in favor of the appellees. Mr. McElroy was ordered to pay the debt within 30 days of judgment or face foreclosure.

Since all the issues before us hinge on the central question of whether there was, in fact, a usurious loan, we address the appellees' arguments on cross-appeal, first.

## I. USURIOUS LOAN

Initially, we note that while we review chancery cases *de novo*, we recognize the superior position of the chancellor to weigh issues of credibility and therefore we do not reverse unless the chancellor's findings are clearly erroneous. *Taylor's Marine, Inc.* v. *Waco Mfg.*, 302 Ark. 521, 792 S.W.2d 286 (1990).

In denying that the transactions amounted to a usurious loan, the appellees first contend that the documents were not usurious on their face. While it is true that, taken alone, the original warranty deed and option contract appear to be documents concerning only the sale of land, and no mention of a loan or obligation on the part of Mr. McElroy to repay the appellees is recited, these transactions call to mind an oft quoted maxim: "The law shells the covering and extracts the kernel. Names amount to nothing when they fail to designate the facts." *Sparks* v. *Robinson*, 66 Ark. 460, 515 S.W. 460 (1899). In *Sparks*, we upheld the trial court's conclusion that an absolute bill of sale of a sewing machine, coupled with an absolute right of redemption, amounted to nothing more than a mortgage with a usurious rate of interest.

Here, the chancellor found that the purported sale and option to repurchase were nothing more than a cloaking device to hide the true transaction—a loan in the amount of $80,000 to be repaid in two years, with interest totalling $40,000. Such a transaction has been historically recognized as one of several simple devices to evade Arkansas usury laws. *See* G. Collins and V. Ham, *The Usury Law of Arkansas: A Study in Evasion*, 8 Ark. L. Rev. 399 (1954).

The burden is upon the one asserting usury to show the transaction is usurious, and usury will not be presumed, imputed, or inferred where an opposite result can be fairly reached. *Winkle v. Grand Nat'l Bank*, 267 Ark. 123, 601 S.W.2d 559 (1980). The test, however, is not whether the "lender" intended to violate the usury laws, but whether the lender knowingly entered into a usurious contact intending to profit by the methods employed. *See Id.*; *Davidson v. Commercial Credit Equip. Corp.*, 255 Ark. 127, 499 S.W.2d 68 (1973). Furthermore, it is unnecessary that both parties intend that an unlawful rate of interest be charged; if the lender alone charges or receives more than is lawful the contract is void. *Superior Improvement Co. v. Mastic Corp.*, 270 Ark. 471, 604 S.W.2d 950 (1980) (decision under prior law).

The chancellor was faced with conflicting testimony throughout the trial in this case. He obviously found Mr. McElroy's version of the events to be the more credible and, deferring to his advantage in observing the witnesses' demeanor and in considering the evidence presented in the record, we cannot conclude that his decision was clearly erroneous.

Mr. McElroy testified that prior to contacting the appellees, he had approached a number of banks and individuals for a loan and had been rejected. He testified that he was in dire financial trouble and that the appellees were aware of his situation.

Mr. McElroy contacted Mr. Grisham and initially requested a loan of $100,000. This request was rejected but, after further discussions, Mr. Grisham agreed to a loan of $80,000, of which $40,000 was to be repaid in one year and another $80,000 within the following year. This agreement later developed into a warranty deed combined with an option to purchase. Mr. McElroy admitted it was he who proposed the terms finally agreed

upon, and we have said that a debtor may be estopped from asserting the defense of usury when the debtor created the infirmity in the contract in order to take advantage of the creditor. *Ford Motor Credit Co. v. Hutcherson*, 277 Ark. 102, 640 S.W.2d 96 (1982). Such was not the case here. Mr. McElroy stated that he was in financial straits and testified repeatedly that it was never his intention to relinquish his land, but simply to arrange a loan for temporary financial relief. Clearly, it was the appellees, not Mr. McElroy, who received an unfair advantage.

Furthermore, there was testimony from Mr. McElroy's expert witness that the land was valued at $227,200, and, in fact, Mr. McElroy states that he paid approximately $238,357 for it. This evidence reflects a gross disparity between what Mr. McElroy paid for it, and the appellees' purchase price of $80,000.

There was also disagreement in the record as to the execution of the contract for sale. The appellees maintained that Mr. McElroy simply failed to exercise his option in time and that a lawful contract for deed was then executed after the allegedly usurious transaction was obsolete. Again, the trial court gave credence to Mr. McElroy's testimony that he began discussing the exercise of his option before the February 13, 1988, expiration date. The parties discussed Mr. McElroy selling a condominium to the appellees for $45,000, which could be rolled over to the option contract, but this plan was not carried out. When it became apparent that Mr. McElroy would be unable to make the $40,000 payment, as required by the option contract, the parties renegotiated and executed the contract for deed with new terms of payment. Although the document was signed on March 1, 1988, Mr. McElroy claims that its terms were decided prior to the expiration of the option and introduced into evidence a typewritten memo setting out such terms, which he claims to have signed on February 13, 1988.

In deciding whether a certain transaction is usurious, all attendant circumstances must be taken into consideration. *Sammons-Pennington Co. v. Norton*, 241 Ark. 341, 408 S.W.2d 487 (1966). Mr. McElroy's obvious financial troubles, his expressed intent to keep the land, the substantial disparity between what Mr. McElroy paid for the property and the appellees' purchase price, and the appellees' immediate renegotiation of a

contract for deed when it became apparent Mr. McElroy could not "exercise his option," all point to the conclusion that none of the parties intended for the property to come into the hands of the appellees any more than was necessary to secure the loan and for the appellees to make a profit from such loan.

Similar transactions have previously been scrutinized by this court and all were deemed usurious. *See Tillar* v. *Cleveland*, 47 Ark. 287, 1 S.W. 516 (1886); *Sparks* v. *Robinson*, 66 Ark. 460, 51 S.W. 460 (1899); *Banks* v. *Walters*, 95 Ark. 501, 130 S.W. 519 (1910); *Ringer* v. *Virgin Timber Co.*, 213 F. 1001 (E.D. Ark. 1914); *Sleeper* v. *Sweetser*, 247 Ark. 477, 446 S.W.2d 228 (1969). We have no trouble in reaching the same conclusion and uphold the chancellor's finding that all of the transactions constituted one scheme to loan money at a usurious rate of interest.

## II. RELEASE

The appellees' second argument on cross-appeal challenges the trial court's denial of their motion for summary judgment in which it was argued that a "release agreement" signed by Mr. McElroy effectively terminated the contract for deed and resulted in Mr. McElroy's forfeiture of the property.

We do not consider this argument, however, since the denial of a motion for summary judgment is not subject to review on appeal, even after a trial on the merits. *See Rick's Pro Dive 'N Ski Shop, Inc.* v. *Jennings-Lemon*, 304 Ark. 671, 803 S.W.2d 934 (1991).

In addition, the appellees' failure to cite any legal authority in support of this argument further merits its dismissal. *See May* v. *Bob Hankins Distrib. Co.*, 301 Ark. 494, 785 S.W.2d 23 (1990).

Having disposed of the appellees' cross-appeal, we now turn to Mr. McElroy's arguments on direct appeal.

## III. INTEREST PAYMENT

Mr. McElroy first contends that the trial court erred in determining the amount of interest he paid on the loan. Ark. Const. art. 19, § 13(a) provides that the maximum rate of interest shall not exceed 5% per annum above the applicable Federal

Reserve Discount Rate. This was established at trial to be 10.5 %. Art. 19, § 13 further provides that all contracts having a rate of interest in excess of the maximum lawful rate will be void as to the unpaid interest.

Although the chancellor determined that the usurious transaction at issue involved the initial "loan" of $80,000 at a repayment of $120,000 (i.e. interest in the amount of $40,000), he erroneously relied on appellee Doshier's calculation of interest under the second contract for deed, which called for a payment of $125,000 to be made in installments at a 10 % interest rate. These figures were calculated by Mr. Doshier during a discussion with Mr. McElroy concerning his repayments under the contract for deed and the chancellor understandably relied on them as no other calculations regarding the amount of interest already paid by Mr. McElroy were offered. The calculations showed that a total of $46,000 paid by Mr. McElroy, $10,866 of that amount went to interest under the terms of the contract. In determining whether a contact is usurious, it must be viewed as of the time it is entered into. *Hayes* v. *First Nat'l Bank of Memphis*, 256 Ark. 328, 507 S.W.2d 701 (1974). Since the usurious transaction began with the original loan of $80,000 to be repaid at $120,000, the amount of interest paid must be calculated on the basis of that initial transaction, rather than the second contract for deed.

At trial, Mr. Danny Criner, President of Newton County Bank, testified that an $80,000 loan, repaid at $40,000 in one year and $80,00 the following year, would result in an annual interest rate of 30 to 35 %. No further testimony or calculations were offered to explain these figures. Mr. McElroy's computations place the illegal rate at approximately 25 %.

Because of these discrepancies, we remand the case so that the correct annual interest rate of the original transaction can be calculated.

In addition, we instruct the trial court to determine, in accordance with the dates and amounts of payments made by Mr. McElroy, how much of the payments already made constitutes payment toward the principle debt and how much constitutes interest. There is sufficient evidence of the exact dates and amounts of the payments in the record from which to calculate the interest. Mr. McElroy has suggested a method of calculation

using a 25% rate of interest, and a 365 exact-day interest formula. We note that this is one of four acceptable methods of computing simple interest, and refer the trial court to our discussions in *Martin's Mobile Homes* v. *Moore*, 269 Ark. 375, 601 S.W.2d 838 (1980), and *Ford Motor Credit Co.* v. *Hutcherson, supra*, for guidance as to the appropriate method of calculation.

## IV. PENALTY

Mr. McElroy next argues that the chancellor erred in refusing to award twice the amount of interest paid. We agree.

Art. 19, § 13(a)(ii) provides:

> All such contracts having a rate of interest in excess of the maximum lawful rate shall be void as to the unpaid interest. *A person who has paid interest in excess of the maximum lawful rate may recover, within the time provided by law, twice the amount of interest paid.* It is unlawful for any person to knowingly charge a rate of interest in excess of the maximum lawful rate in effect at the time of the contract, and any person who does so shall be subject to such punishment as may be provided by law. (Emphasis added).

The trial court interpreted the above language to be discretionary and awarded only $16,300 as penalty, based on an interest calculation of $10,866. Whether this specific provision is mandatory or discretionary has not been decided by this court, although we have upheld awards for twice the amount of interest paid. *See Taylor's Marine* v. *Waco Mfg., supra.*

In *Taggart & Taggart Seed Co., Inc.* v. *City of Augusta*, 278 Ark. 570, 647 S.W.2d 458(1983), however, we reaffirmed our principle that those things which are of the essence of the thing to be done are mandatory, while those not of the essence of the thing to be done are directory only. 278 Ark. at 574, 647 S.W.2d at 459 (1983) (citing *Edwards* v. *Hall*, 30 Ark. 31 (1875)). Art. 19, § 13, as we interpret it, is penal in nature. This is evidenced by the language following the provision for recovery of interest. The purpose of the article was obviously to discourage ursurious contracts, and to allow the trial courts to dispense with the penalty at their discretion would be to defeat this purpose.

Furthermore, we reminded, in *Arkansas State Racing Comm'n* v. *Southland Racing Corp.*, 226 Ark. 995, 295 S.W.2d 617 (1956) that "[i]t is of course a familiar rule of statutory construction that 'may' is to be construed as 'shall' when the context of the statute so requires." Constitutional provisions are construed in the same manner as statutes. *See Shepherd* v. *City of Little Rock*, 183 Ark. 244, 35 S.W.2d 361 (1931); *McDonald* v. *Bowen*, 250 Ark. 1049, 468 S.W.2d 765 (1971).

We hold that the language in Art. 19, § 13 is mandatory, and further remand with directions to award Mr. McElroy twice the amount of the interest to be calculated in accordance with our previous instructions.

## V. ATTORNEY'S FEES

Mr. McElroy next argues that he should have been awarded attorney's fees under Ark. Code Ann. § 16-22-308 (Supp. 1989). This statute allows a prevailing party in a civil action to recover reasonable attorney's fees for various causes of action, including breach of contract. Mr. McElroy claims that a usurious transaction falls within this category.

We do not address this argument, however, since the trial court did not rule on the issue. Although Mr. McElroy asked for attorney's fees in his complaint, and in a letter to the trial court following its first opinion letter, the trial court did not rule upon the request, either in its second letter of opinion or in its final order.

The burden of obtaining a ruling is on the movant; objections and matters left unresolved are waived and may not be relied upon on appeal. *Carpetland of N.W. Ark., Inc.* v. *Howard*, 304 Ark. 420, 803 S.W.2d 512 (1991).

## VI. POST JUDGMENT INTEREST

Finally, Mr. McElroy contends that if this court decides not to adjust the interest calculation or penalty assessed so as to award a net judgment in his favor, the trial court's decision should be modified to eliminate the requirement that he pay post judgment interest.

Whether or not post judgment is awarded in Mr. McElroy's favor, will depend on the trial court's decision on

remand. However, we do not agree with Mr. McElroy's argument that Art. 19, § 13 bars post judgment interest. Art. 19 voids only the payment of interest under the usurious contract and has nothing to do with the interest due on the judgment amount. Should the trial court award net judgment again in favor of the appellees, it may also again award post judgment interest on that amount.

The decision of the trial court is affirmed in part and reversed and remanded in part, with instructions not inconsistent with this opinion.