Colonel Don Melton, Director Arkansas State Police 1 State Police Plaza Drive Little Rock, AR 72209
Dear Colonel Melton:
I am writing in response to your request for my opinion regarding the scope of the responsibility of the Arkansas State Police (the "ASP") to respond to requests for criminal history checks for noncriminal justice purposes. You report the following background:
 The requests are sometimes received from the Department of Education or Department of Human Services as required by the Arkansas Code. Other times the requests are received from private employers. Criminal history checks for non-criminal justice purposes contain only the convictions of the subject. The report does not include pending arrests or sealed records. It is possible for this Department to give a "no record located" criminal history check report to the Department of Human Services for a person to work in a daycare facility, when the subject has a sealed rape conviction.
 Criminal history records may be sealed under several provisions of Arkansas law. The general effect of the sealing of records prohibits the ASP from releasing criminal history convictions (for non-criminal justice purposes) which are covered by the seal order. The sealing of the record does not extend to law enforcement use.
 Over the past few months, State Police has been reviewing the Orders to Seal criminal histories. ACIC is responsible for the initial receipt of the Orders and the sealing [of] the electronic entry in the
 CCH, but the ASP Identification Bureau is the keeper of the orders to seal. Numerous criminal history checks collected to date reveal several questionable issues. Some of the orders use an incorrect statutory authority, while others order the sealing of more than one conviction, and others seal records under the first offender law when the person has a previous felony conviction. These are contrary to Arkansas law. The Department also receives Certificates of Expungement from the Department of Corrections, which they appear to no longer have the authority to issue.
 This Department's concern is two-fold: 1) we are knowingly accepting sealed or expunged criminal records that do not meet the elements of the law, and 2) we are knowingly releasing criminal history background checks to the public that are incomplete and incorrect. Though the burden would ultimately be placed on the originating judicial official, I am concerned about the Department's and our personal liability for releasing records that we believe do not meet the legal requirements for sealed or expunged records.
 I have divided the possible errors found in the seal orders into two categories:
 Technical errors — The seal order is a mainly fill-in-the-blank type order. There are blanks to list the offense and its code citation and there is a blank to list under what code authority the Court has to issue the order to seal. The technical error can be where the offense code citation is listed in the court authority blank or where the court authority blank is left with nothing filled in (incomplete).
 Major flaws — Under the First Offender Act, in A.C.A. § 16-93-301 et seq. (Act 346 of 1975) a person who was placed on probation may have the record of that offense sealed if they [sic] do not have a previous felony conviction. There are numerous orders where the record was sealed when a person had a previous felony conviction.
 In one situation a seal order could not be entered because of errors in the information (SID#). The person had a previous felony conviction and sought to have the second conviction record sealed under the first offender program. After careful review of the matter, we provided the correct technical information to the Court and politely drew attention to the fact that entering that seal order would be contrary to Arkansas law. A subsequent seal order with the correct technical information was entered, improperly sealing the second criminal conviction under the first offender program.
 The law also states that no person shall avail himself of the provisions of the First Offender Act on more than one (1) occasion. There are several orders in which the court sealed different offenses with different arrest dates in one order.
The circumstances just described have prompted you to pose the following three questions:
 1. Must the Arkansas State Police ("ASP") and ACIC accept orders to seal and expungements of criminal records that are entered contrary to law — that is, incorrectly or incompletely?
 2. What is the Department's liability in a situation where an order to seal or an expungement has been improperly entered, the conviction that was sealed would be a disqualifying offense to employment with that Department (DHS, DOE, etc.) and ASP issues a "no record found" letter and the subject repeats the offense that the seal order/expungement was entered for?
 3. May the Department avoid or reduce its liability (if any is found) with a general disclaimer on the record check report that states in a general manner that all reports do not contain pending arrests, sealed or expunged convictions/orders?
RESPONSE
With respect to your first question, I believe the ASP and ACIC must honor any and all properly issued certificates of expungement or uniform orders to seal records. In my opinion, it would be inappropriate for these administrative agencies to second-guess an expungement determination made by an authorized court or agency. However, in instances where an expungement does not remove disqualification from employment, I believe the ASP should include the fact of the expungement on its criminal background report, as opposed to reporting "no record found." With respect to your second question, I believe the ASP would face no liability for honoring an expungement issued in proper form, regardless of whether the issuing authority was justified in its action. Given this conclusion, I believe your third question is moot. However, I will opine that there would be no legal consequences one way or the other if the ASP were to include a general disclaimer on its criminal background reports.
Question 1: Must the Arkansas State Police ("ASP") and ACIC accept ordersto seal and expungements of criminal records that are entered contrary tolaw — that is, incorrectly or incompletely?
It depends. If a designated authority has issued a certificate of expungement pursuant to Act 378 of 1975 or a court has entered a properly executed uniform order to seal or expunge records, I believe the ASP and ACIC, functioning in purely administrative capacities, must accept and honor the expungement regardless of whether the court was justified in issuing it. However, in the case of uniform orders to seal records, I believe these agencies may accept an expungement only if it scrupulously complies with the formal requirements set forth at A.C.A. § 16-90-905.
Section 16-90-904 of the Arkansas Code (Supp. 2001) provides:
 (a) Any individual who is eligible to have an offense expunged may file a uniform petition to seal records, as described in § 16-90-905, with the court in the county where the crime was committed.
 (b)(1) A copy of the uniform petition for sealing of the record shall be served upon the prosecuting authority for the county in which the petition is filed and upon the arresting agency; however, it shall not be necessary to make any agency a party to the action.
 (2)(A) Any person desiring to oppose the sealing of the record shall file a notice of opposition with the court setting forth reasons within thirty (30) days after receipt of the uniform petition or after the uniform petition is filed, whichever is the later date.
(B) If no opposition is filed, the court may grant the petition.
 (C) If notice of opposition is filed, the court shall set the matter for a hearing.
 (c) If the court determines that the record should be sealed, the uniform order, as described in § 16-90-905, shall be entered and filed with the clerk of the court.
 (d) The clerk of the court shall certify copies of the uniform order to the prosecuting attorney who filed the underlying charges, the arresting agency, the Administrative Office of the Courts, and the Arkansas Crime Information Center.
 (e)(1) The clerk of the court shall remove all petitions, orders, docket sheets, and documents relating to the case, place them in a file, and sequester them in a separate and confidential holding area within the clerk's office.
 (2)(A) A docket sheet shall be prepared to replace the sealed docket sheet.
 (B) The replacement docket sheet shall contain the docket number, a statement that the case has been sealed, and the date that the order to seal the record was issued.
 (3) All indices to the file of the individual with a sealed record shall be maintained in a manner to prevent general access to the identification of the individual.
 (f) Upon notification of an order to seal records, all clerks, arresting agencies, and other criminal justice agencies maintaining such conviction records in a computer-generated database shall either segregate the entire record into a separate file or by other electronic means ensure that the sealed record shall not be available for general access unless otherwise authorized by law.
This statute sets forth a clear procedure whereby an order to seal records shall issue: (1) the offender petitions to seal the record; (2) the prosecutor is notified of the petition; (3) the court allows thirty days for the filing of any opposition; (4) after hearing the opposition, if any, the court in its discretion determines whether it should enter a uniform order to seal the record.
As the court noted in Fulmer v. State, 337 Ark. 177, 184, 987 S.W.2d 700
(1999): "The purpose of the petition is to provide notice to the prosecuting attorney and the arresting agency, so that they may have the opportunity to oppose the petition." As this passage reflects, the legislature's intention was to establish a procedure whereby the court can determine, subject to possible opposition by the charging authority within a specified period, whether expungement is warranted. The legislative assumption underlying this notice provision is that the prosecuting attorney or the arresting agency will raise in timely fashion any meritorious objections to issuance of the expungement, including the fact of previous felony convictions. The statute likewise directs that, either absent or in spite of any such objection, the court may in its discretion enter a final uniform order that the record be sealed and the appropriate ministerial agencies be informed thereof. Nothing in the statute even remotely suggests that in the wake of this procedure, a ministerial agency like the ASP or the ACIC may in effect ignore the court's order by divulging sealed information, regardless of whether the court was correct or not in issuing the uniform order.
However, notwithstanding my belief that the ASP is obliged to honor the terms of a properly entered uniform order, whether rightly entered or not, I doubt it is either obliged or authorized to honor an order that does not conform to the statutorily prescribed format. Section 16-90-905
of the Code (Supp. 2001) provides in pertinent part:
 (a)(1) The Arkansas Crime Information Center shall adopt and provide a uniform petition and order to seal records which shall be used by all petitioners and by all circuit and municipal courts in this state.
 (2) No order to seal or expunge records covered by this subchapter shall be effective unless the uniform order is entered.
 (3) The petition shall include a statement that the information contained in the petition is true and correct to the best of the petitioner's knowledge, and the order shall, at a minimum, contain the following data elements:
(A) The person's full name, race, sex, and date of birth;
 (B) The person's full name at the time of arrest and adjudication of guilt, if different than the person's current name;
 (C) The crimes for which the person was adjudicated guilty, and the date of the disposition;
(D) The identity of the court;
 (E) The provision under which the individual was sentenced that provides for sealing or expungement of the record; and
(F) The specific records to be sealed.
In Fulmer, the court observed:
 In reading section 16-90-905 in its entirety, it is clear that the essence of the thing to be done is the creation of a uniform order to seal the records. This is apparent from the fact that section 16-90-905(a)(3) specifically requires six different categories of data to be included in the order, while the only requirement specified for the petition is a statement that the petition is true and correct to the best of the petitioner's knowledge. Additionally, subsection (a)(2) provides that no order to expunge records "shall be effective unless the uniform order is entered."
337 Ark. at 184. The court further invoked the following principle of statutory construction as a basis for concluding that a court must strictly comply with the uniform-order requirement, whereas the offender seeking expungement need only substantially comply with the uniform-petition requirement referenced in A.C.A. §§ 16-90-904(a) and -904(b)(1):
 This court has . . . consistently held that in determining whether a statute's provisions are mandatory or merely directory, we adhere to the principle that those things which are of the essence of the thing to be done are mandatory, while those not of the essence of the thing to be done are directory only. See McElroy v. Grisham, 306 Ark. 4, 810 S.W.2d 933 (1991); Taggart Taggart Seed Co., Inc. v. City of Augusta, 278 Ark. 570, 647 S.W.2d 458 (1983); Edwards v. Hall, 30 Ark. 31 (1875).
Id. at 183.
Specifically in response to your question, then, I believe the ASP should honor any court order of expungement only if it complies in all respects with the provisions of A.C.A. § 16-90-905. Accordingly, with respect to the example set forth in your factual recitation, I believe the ASP should decline to honor any order to seal that fails to recite the authority for the expungement, as required under A.C.A. §16-90-905(a)(3)(E). However, I believe that upon receiving such a deficient order, the AASP should inform the issuing court of the deficiency, thereby possibly affording it an opportunity to cure the problem. By contrast, I believe the ASP must honor a formally complete uniform order to seal the records even if it knows that the basis recited for issuing the order is wrong. In enacting A.C.A. § 16-90-904, the legislature adopted what I consider the only mechanism for challenging a request to seal the records. The legislature apparently assumed that so long as the prosecuting authority and the arresting agency through notice are afforded an opportunity to challenge a pending petition for expungement, sufficient safeguards exist against the wrongful issuance of a uniform order to seal the records. If experience has shown that the legislature was wrong in this assumption, remedial legislation might be warranted. The ASP, in its purely administrative capacity, should not undertake any such reform without legislative sanction.
The preceding discussion has focused exclusively on court-ordered expungements. However, you report that the Department of Corrections on occasion issues certificates of expungement pursuant to the Alternative Service Act, enacted as Act 378 of 1975 — a practice you suggest is unauthorized under current law. In the enclosed Ark. Op. Att'y Gen. No.97-160, my immediate predecessor discussed in considerable detail the limited continued application of Act 378 of 1975:
 The Alternative Service Act was codified at A.C.A. §§ 16-93-501 to -510. Acts 531 and 548 of 1993 repealed A.C.A. §§ 16-93-501 through 16-93-510 effective January 1, 1994. Subsequently, the General Assembly enacted Act 988 of 1995 [A.C.A. § 16-90-901 et seq.], entitled "An Act to Define Expungement and Establish the Procedure for the Sealing of Criminal Records; to Amend Current Provisions of Arkansas Law Involving Expungement; and for Other Purposes." It is my understanding from your letter that prior to the enactment of Act 998, the Post Prison Transfer Board was issuing certificates of expungement to individuals sentenced under the Alternative Service Act. It is also my understanding from your letter that the Post Prison Transfer Board has attempted to comply with Act 998, but these attempts have been "challenged" by some circuit and circuit/chancery judges.
 It is well established that sentencing must be in accordance with the statutes in effect at the time of the commission of the offense. Cody v. State, 326 Ark. 85, 929 S.W.2d 159 (1996); State v. Townsend, 314 Ark. 427, 863 S.W.2d 288 (1993); see also Bosnick v. Lockhart, 283 Ark. 206, 672 S.W.2d 52 (1984), supplemental opinion on denial of rehearing, 283 Ark. 209, 677 S.W.2d 292 (1984) (parole status governed by the parole statute in effect at the time the crime was committed). Individuals sentenced under the Alternative Service Act are thus eligible for expungement in accordance with the version of the Act under which they were sentenced. Id.; see Irvin v. State, 301 Ark. 416, 784 S.W.2d 763 (1990). Accordingly, in order to determine the procedure for the expungement of a record for an individual sentenced pursuant to the Alternative Service Act, the version of the Act under which the individual was sentenced must be examined.
As this passage suggests, notwithstanding the fact that the legislature has repealed Act 378, individuals sentenced under this legislation are entitled to the benefit of the expungement provisions in effect at the time of their sentencing. It follows that on occasion the ASP will receive a certificate of expungement issued by one of the authorized offices discussed in my predecessor's analysis, which I will not repeat here. In my opinion, the ASP should honor such expungements if warranted under the standards my predecessor discussed.
Question 2: What is the Department's liability in a situation where anorder to seal or an expungement has been improperly entered, theconviction that was sealed would be a disqualifying offense to employmentwith that Department (DHS, DOE, etc.) and ASP issues a "no record found"letter and the subject repeats the offense that the sealorder/expungement was entered for?
Before addressing the substance of your question, I should note that the ASP, as a state agency, is subject to the sovereign immunity ensured by Ark. Const. art. 5, § 20, which provides: "The State of Arkansas shall never be made defendant in any of her courts." Any action for damages against the ASP would consequently proceed before the Arkansas State Claims Commission, which is statutorily charged with "exclusive jurisdiction over all claims against the State of Arkansas and its several agencies, departments, and institutions." A.C.A. § 19-10-204(a).
I should further note that state law immunities do not override a cause of action under federal law. See Monell v. New York City Department ofSocial Services, 436 U.S. 658 (1978). Any ASP employee enjoys a qualified immunity from any action alleging a violation of federal law. See Mosierv. Robinson, 722 F. Supp. 1245 (E.D.Ark. 1989). As I stated in Ark. Op. Att'y Gen. No. 1999-363:
 Under the doctrine of qualified immunity, an individual is immune from trial if the actions complained of were taken in good faith in the performance of one's duties, and the acts do not violate any clearly established constitutional right. Harlow v. Fitzgerald, 457 U.S. 800
(1982). The test for the applicability of qualified immunity turns upon the "objective legal reasonableness of the action," assessed in light of legal rules that were "clearly established" at the time the action was taken. See Anderson v. Creighton, 483 U.S. 635 (1987). The immunity is "qualified" because it does not obtain where the activity is in violation of clearly established law that a reasonable person would have known. Robinson v. Beaumont, 291 Ark. 477, 725 S.W.2d 839 (1987); Matthews v. Martin, 280 Ark. 345, 658 S.W.2d 374 (1983).
As indicated in my response to your previous question, whatever its knowledge or suspicions that an expungement has been issued "improperly," I believe that the ASP in its purely administrative capacity is obligated to give effect to the expungement. In my opinion, the only authorized manner to challenge the propriety of the expungement is to pursue the opposition set forth at A.C.A. § 16-90-904.
For reasons discussed immediately below, I assume your question is not intended to address the situation in which an expunged offense would nonetheless disqualify an applicant from employment. The Arkansas Code contains various provisions directing that an applicant be disqualified from employment even if a previous adjudication has been expunged. See
the enclosed Ark. Op. Att'y Gen. No. 2002-141 (discussing such statutes and opining that "if a statute prohibits certain activities by a person who has `pled guilty or nolo contendere' or has been `found guilty' of certain offenses, that statutory reference to pleading guilty or nolo contendere has the effect of overriding an expungement"). In response to my inquiries, I have been informed that the ASP currently distinguishes between jobs for which an expungement would be an employment disqualification and those for which it would not, including the expungement history in its criminal background report in the former instance but excluding it in the latter. It would appear, then, that a disqualifying expungement, whether properly issued or not, would necessarily be reported and no "no record found" letter would ever issue, thus precluding the scenario set forth in your question.
However, one reference in your request suggests that the ASP may follow a different practice. Among the statutes characterizing an expungement as a disqualification to employment are A.C.A. §§ 20-78-602 and -604 (Repl. 2001), which apply to child-care facility owners, operators and employees. The latter of these statutes provides that an applicant for employment who has pled guilty or nolo contendere to or been found guilty of rape shall be absolutely disqualified from employment for a period of five years from the date of the plea, following which the Division of Child Care and Early Childhood Education upon application might allow the employment on a discretionary basis. I cannot reconcile these statutes with your report that "[i]t is possible for the Department to give a `no record located' criminal history check report to the Department of Human Services for a person to work in a daycare facility, when the subject has a sealed rape conviction." Pursuant to ASP policy as communicated to me, rather than reporting "no record found" under the recited circumstances, the ASP would include the fact of the expungement in its criminal background report, thus triggering an automatic disqualification during the first five years following the plea and a presumed disqualification thereafter. A.C.A. § 20-78-604(b)(2)(A).
Whatever its current practice, as noted above, regardless of whether an expungement was warranted, so long as the expungement was in proper form, I believe the ASP is obligated to report "no record found" if the expungement is not a disqualification for employment and to report only the existence of any expungement where it does not operate to restore eligibility for the position sought. So long as it follows these guidelines, I do not believe the ASP will face any exposure, regardless of whether a successful applicant recommits the underlying offense once hired. I fully agree with the suggestion you offer in your request — that any potential liability for improperly issuing an order to seal records "would ultimately be placed on the originating judicial official."[1]
Question 3: May the Department avoid or reduce its liability (if any isfound) with a general disclaimer on the record check report that statesin a general manner that all reports do not contain pending arrests,sealed or expunged convictions/orders?
This question appears to be moot in light of my conclusion that the ASP faces no liability so long as it complies with the procedures discussed above. Nevertheless, I will note that I am unaware of any provision of law that would preclude the ASP from including such a general disclaimer on its reports. However, I doubt that including a disclaimer on a criminal background report would affect the ASP's potential liability one way or the other. The ASP either is or is not obligated to provide the information; purely as a matter of logic, merely advising a recipient that additional information might exist cannot be considered the equivalent of fulfilling a duty of disclosure. Having offered this conclusion, I can only reiterate my belief that the only duties the ASP must perform are to comply with a properly issued certificate of expungement or uniform order to seal records and to report the existence of disqualifying expungements.
Assistant Attorney General Jack Druff prepared the foregoing, which I hereby approve.
Sincerely,
MARK PRYOR Attorney General
MP:JD/cyh
Enclosures
[1] You have not asked about, and I will not discuss, the various immunities that might apply to insulate an errant judge from personal liability under these circumstances.