CRAWFORD & LEWIS *v.* BOATMEN'S TRUST COMPANY of Arkansas, Inc., Formerly Known as Worthen National Bank of Arkansas, as Trustee of the Mae M. Stacy Trust; and Polly Stacy

98-1520                                                    1 S.W.3d 417

Supreme Court of Arkansas
Opinion delivered October 7, 1999

*Joel Taylor*, for appellant/cross-appellee.

*Wright, Lindsey & Jennings LLP*, by: *Judy Simmons Henry* and *Phyllis M. McKenzie*, for appellee/cross-appellant.

DONALD L. CORBIN, Justice. Appellant Crawford & Lewis, a Louisiana law firm, appeals the order of the Pulaski County Chancery Court denying its petition for attorney's fees and disgorging fees previously paid to it by the Mae M. Stacy Trust. For reversal, Crawford & Lewis argues that the chancellor abused her discretion by failing to award its requested fees and by disgorging fees previously paid. Appellee Boatmen's Trust Company of Arkansas (Boatmen's), has filed a cross-appeal on the issue of attorney's fees to be awarded in defense of Crawford & Lewis's petition. Boatmen's also seeks confirmation from this court regarding the chancellor's award of postjudgment interest on

the fees disgorged from Crawford & Lewis. This case was certified to us from the Arkansas Court of Appeals pursuant to Ark. Sup. Ct. R. 1-2(d). We affirm.

## I.   Facts and Procedural History

The record in this case reveals the following facts. On December 14, 1995, Crawford & Lewis filed a petition in chancery court seeking an award of attorney's fees in the amount of $38,780.19, for services rendered on behalf of the Mae M. Stacy Trust. Boatmen's and Polly Stacy, the sole beneficiary of the trust, filed objections to the petition for fees. Boatmen's also filed a cross-claim arguing that the trust was "entitled to a disgorgement of all fees and expenses previously paid by it to Crawford & Lewis[.]" A four-day hearing was held on these issues and the chancellor denied Crawford & Lewis's petition for attorney's fees, but granted Boatmen's cross-claim that $16,608.89 in fees previously paid to the firm be disgorged. In order to understand the issues raised on appeal, it is necessary to set forth the facts of the underlying transactions that led to this fee dispute.

The trust was established in 1971 naming Polly Stacy as the sole income beneficiary. Floyd Richardson Jr. was named as the sole residuary beneficiary of the trust, as well as a co-trustee with Boatmen's.[1] The trust granted Richardson tie-breaking authority in the event of a dispute with the other trustee. Beginning around 1992, an acrimonious relationship developed between Richardson and Boatmen's because of a dispute over investment strategies. Utilizing his tie-breaking authority, Richardson purchased a home in Baton Rouge, Louisiana, on July 17, 1992. He used $52,500.00 worth of trust assets to make the down payment, but title to the property was placed in his and his wife's names. Richardson and his wife occupied the home, but the trust paid the mortgage, utilities, and renovation expenses for the home. The

---

[1] Since the trust was established, Boatmen's has undergone several changes in ownership. It began as Worthen National Bank of Arkansas. At the time the action was brought in the chancery court, Worthen had been purchased by Boatmen's. Since that time, however, Boatmen's was purchased by NationsBank and was finally merged with Bank of America.

Richardsons were represented at the closing of this property by Laura Poché, a partner in Crawford & Lewis's firm. Three days after the closing, Poché sent Richardson a letter urging him to proceed with the transfer of title from himself to the trust. After sending this letter, Poché had no further contact with Richardson for over a year.

In July 1993, Richardson entered into a lease-purchase contract with Dr. Lawrence Goldberg to sell the Louisiana home. Goldberg paid $45,000.00 as a down payment, and Richardson used the money to open a separate account with Merrill Lynch rather than depositing the funds with the custodial trustee. The record indicates that Richardson spent the $45,000.00 for personal purposes. After entering into this agreement with Goldberg, Richardson again contacted Poché requesting that she draft a separate lease agreement for Goldberg. Poché spent several months attempting to draft a lease with terms agreeable to Goldberg but was never successful. The fees resulting from this work were billed to, and paid by, the trust. Even though the parties were unable to agree on lease terms, they did agree to a sale of the property to Goldberg. Prior to selling the property to Goldberg, Richardson requested that Poché transfer title from him to the trust, and then transfer title to Goldberg. Again, the attorney's fees that accrued as a result of this transaction were paid by the trust.

Goldberg financed part of the purchase price through Ford Credit; Boatmen's agreed to carry a note on the remaining balance. Goldberg defaulted on the notes and ultimately filed bankruptcy in August 1994. Goldberg's bankruptcy trustee filed an adversary proceeding against the trust and Richardson, personally, alleging fraud in the sale of the home and seeking to recover the $45,000.00 Goldberg paid to Richardson. Crawford & Lewis filed a motion to dismiss on behalf of Richardson, but filed an answer on behalf of the trust. After determining that Richardson was being sued in his individual capacity, Crawford & Lewis ceased representation of Richardson, personally, but continued to represent him in his capacity as co-trustee.

Concerned that Crawford & Lewis was putting Richardson's personal interests before the best interests of the trust, Boatmen's

sought to obtain independent counsel in the suit against Goldberg. On April 28, 1995, the chancellor issued an order instructing Crawford & Lewis to provide a status report on the case and to halt all activity on behalf of the trust. The order further authorized Boatmen's to obtain independent bankruptcy counsel in Louisiana if needed; Boatmen's then retained David Rubin. Poché submitted the status report as requested, but asserted that the chancery court lacked jurisdiction to compel her to cease representation on behalf of the trust. Poché refused to turn over her files to Rubin and continued to represent the trust in the Goldberg bankruptcy matter on behalf of Richardson, as co-trustee, while Rubin represented Boatmen's in the Goldberg action.

Richardson soon filed his own bankruptcy action in Louisiana, and, in the summer of 1995, Boatmen's filed a motion to have Richardson removed as co-trustee. At the removal hearing before the Louisiana bankruptcy court, Poché voluntarily testified on Richardson's behalf regarding his actions as trustee, and her firm's representation of the trust in various matters. The bankruptcy court found that Richardson had engaged in extensive self-dealing as co-trustee, and it entered judgment in favor of the trust in the amount of $147,417.89 and removed Richardson as co-trustee. During its oral ruling on September 28, 1995, the bankruptcy court made the following comments regarding Ms. Poché's representation of Richardson:

> Ms. Poché needs a little seasoning. Ms. Poché never understood what she was doing. Ms. Poché doesn't understand that a lawyer cannot close her eyes and say anything I'm told to do is okay because of the veto power.
>
> Here we have classic self-dealing which fooled or at least confused the lawyer to the extent that the lawyer took four-and-a-half months before the lawyer communicated to the co-trustee about anything that was going on. And why? The explanation is, why; because I was representing Mr. and Mrs. Richardson, they were the record owners, but they were buying it and acting as co-trustee for the trust.

After Richardson was removed as co-trustee, Crawford & Lewis ceased representation of the trust and subsequently filed a motion

for attorney's fees with the Arkansas chancery court. Interestingly, Crawford & Lewis also filed a proof of claim against Richardson's bankruptcy estate for the exact amount of fees it sought from the trust.

In denying Crawford & Lewis's motion for fees and ordering the firm to disgorge fees previously paid, the chancellor set forth very specific findings of fact and conclusions of law. The chancellor's order relied on the factors enumerated by this court in determining when an award of attorney's fee is reasonable. Those factors include, but are not limited to, the time devoted by the law firm; the ability, skill, and competence of counsel; the nature and extent of services rendered; the results obtained, amount of recovery, and benefit to the trust; and, adequate compensation for competent attorneys and fees awarded in similar cases. *See Rahat v. Golmirzaie*, 332 Ark. 569, 966 S.W.2d 883 (1998). The chancellor also considered the undisclosed conflicts of interests present in Crawford & Lewis's representation of the trust, as well as the firm's violation of the chancellor's prior order to cease its representation of the trust. Citing her extensive knowledge of the trust, its assets, and the attorneys and parties involved, the chancellor ultimately found that most, if not all, of the services rendered in connection with the fee application were rendered primarily for the benefit of the Richardsons, individually, and not the trust, and therefore should not be compensable by the trust.

## II.   Points on Appeal

For reversal of the chancellor's ruling, Crawford & Lewis argues that there is no basis in fact or in law for the disgorgement of fees or the denial of their motion for additional fees. Crawford & Lewis asserts that the chancellor erroneously relied upon misstatements by Boatmen's witnesses and counsel. Crawford & Lewis argues further that there was no evidence to support a finding that a conflict of interest existed in its representation of the trustees. We disagree with Appellant that there is no basis in fact or law to support the chancellor's order and therefore affirm her decision.

■ ■   We review chancery cases *de novo* on the record, but we will not reverse a finding of fact by the chancellor unless it is clearly erroneous. *Slaton v. Slaton*, 336 Ark. 211, 983 S.W.2d 951 (1999). A finding is clearly erroneous when, although there is evidence to support it, the reviewing court on the entire evidence is left with a definite and firm conviction that a mistake has been committed. *Saforo & Assocs., Inc. v. Porocel Corp.*, 337 Ark. 553, 991 S.W.2d 117 (1999); *RAD-Razorback Ltd. Partnership v. B.G. Coney Co.*, 289 Ark. 550, 713 S.W.2d 462 (1986). In setting the amount of fees awarded, it is well settled that the chancellor is in a better position to evaluate counsel's services than an appellate court, and, in the absence of clear abuse, the chancellor's award of an attorney's fee will not be disturbed on appeal. *Wilson v. Wilson*, 294 Ark. 194, 741 S.W.2d 640 (1987).

■   In its counterclaim, Boatmen's asked the chancellor to disgorge the fees previously paid by the trust to Crawford & Lewis. Boatmen's apparently relied on federal law in support of its counterclaim, as federal bankruptcy courts have recognized a remedy for the disgorgement of attorney's fees. *See In Re Coones Ranch, Inc.*, 7 F.3d 740 (8th Cir. 1993); *In Re Sauer*, 222 B.R. 604 (8th Cir. BAP 1998). Arkansas courts have not recognized the term "disgorgement." This court, however, has recognized a remedy for debarring an attorney from collecting compensation as a result of representing conflicting interests. Our decisions visiting this issue have cited to the opinion of Judge Learned Hand in *Silbiger v. Prudence Bonds Corp.*, 180 F.2d 917 (2nd Cir. 1950), which states in relevant part:

> Certainly by the beginning of the Seventeenth Century it had become a common-place that an attorney must not represent opposed interests; and the usual consequence has been that he is debarred from receiving any fee from either, no matter how successful his labors. Nor will the court hear him urge, or let him prove, that in fact the conflict of his loyalties has had no influence upon his conduct; the prohibition is absolute and the consequence is a forfeiture of all pay.

*Id.* at 920-21 (footnotes omitted). *See Sikes v. Segers*, 266 Ark. 654, 662-63, 587 S.W.2d 554, 558 (1979); *American-Canadian Oil & Drilling Corp. v. Aldridge & Stroud*, 237 Ark. 407, 410, 373

S.W.2d 148, 150 (1963). Similarly, the United States Supreme Court held that where a party was serving more than one master or was subject to conflicting interests, he should be denied compensation. *Woods v. City Bank Co.,* 312 U.S. 262, 268 (1941). The Court went on to state that it is no answer to say that fraud or unfairness was not shown to have resulted.

■ In the present case, Crawford & Lewis attempts to argue that its prior representation did not result in harm to the trust. This argument fails for two reasons. First, the trust did suffer harm as a result of the law firm's blind representation of Richardson's interests. Particularly, the trust assets were depleted in order to pay attorney's fees for services that benefitted Richardson, and not the trust. Second, in light of the Supreme Court's decision in *Woods,* 312 U.S. 262, the argument that no harm resulted is irrelevant. The important consideration is that Crawford & Lewis was representing two parties whose interests were diverse.

■ Similarly, we are not persuaded by Crawford & Lewis's argument that their representation of Richardson and the trust did not create a conflict of interest. Crawford & Lewis's reliance on *American-Canadian,* 237 Ark. 407, 373 S.W.2d 148, is misplaced as it fails to recognize an important distinction between the situation in *American-Canadian* and the present matter. In the prior case, the evidence indicated and this court determined that the interests of the note maker and the note holder were never adverse. Here, however, the chancellor correctly found that the evidence established that the interests of Richardson and Boatmen's were extremely adverse. Indeed, the record reflects that almost from the beginning of its representation of these parties, Crawford & Lewis had notice that the relationship between Richardson and Boatmen's was acrimonious. A prime example of this was when Richardson sought to have the trust purchase the first note on the Louisiana house after Goldberg had defaulted, and Boatmen's repeatedly resisted such efforts. Instead of determining what action was in the best interest of the trust, Crawford & Lewis continually pressed Boatmen's to repurchase the first mortgage as Richardson desired. Clearly, under the holding in *American-Canadian,* Crawford & Lewis's representation of conflicting interests

results in its forfeiting of all rights to any compensation from the trust.

■ Crawford & Lewis's attempt to argue that no conflict existed because it was representing Richardson and Boatmen's as co-trustees is thus without merit. The services rendered by Crawford & Lewis were at the behest of Richardson. The testimony of Ms. Poché supports Boatmen's contention that the law firm failed to adequately inform Boatmen's of matters related to trust affairs. Crawford & Lewis's time records reflect constant contact with Richardson, but only sporadic contact with Boatmen's representatives. Documents introduced as exhibits in this case below prove that oftentimes Crawford & Lewis only copied the documents to Richardson, but not to Boatmen's. Crawford & Lewis tried to explain the lack of contact with Boatmen's by claiming that it was their belief that Richardson was in contact with Boatmen's. This explanation, however, effectively thwarts Crawford & Lewis's assertion that it was representing both Richardson and Boatmen's as co-trustees.

■ Finally, this court has consistently held that any award of attorney's fees should be reasonable. There are established principles which a court should use in determining the reasonableness of an attorney's fee and, among others, those should include consideration of whether or not the actions taken by a party seeking such fees was meritorious and successful. *Griffin v. First Nat'l Bank*, 318 Ark. 848, 888 S.W.2d 306 (1994). Even though this case involves the denial of fees, this principle is still applicable because the decision to deny any fees under the circumstances was entirely reasonable. Crawford & Lewis petitioned the chancellor for an award of fees for services rendered to the detriment of the trust, and to the benefit of Richardson, who had long been defrauding the trust. Because the chancellor determined that a conflict of interest existed, and our case law supports a denial of fees in such situations, we cannot say that the chancellor clearly erred in ordering that the fees be returned to the trust. Furthermore, we cannot say the chancellor erred in denying Crawford & Lewis's motion for an award of additional fees. We thus affirm the chancellor's ruling pertaining to the points on appeal.

### III.  Points on Cross-Appeal

For its first point on cross-appeal, Boatmen's argues that the chancellor inadvertently omitted any provision for attorney's fees to the bank for its successful defense against Crawford & Lewis's petition. Boatmen's asserts that it submitted an itemization of its fees to the chancellor at her request and also prepared and submitted a precedent to the chancellor that included a provision awarding attorney's fees to the bank. Boatmen's contends further that the chancellor's final judgment was "erroneously issued" without a provision for attorney's fees. Boatmen's thus urges this court to remand the matter to the chancellor for determination. We cannot reach the merits of this argument because Boatmen's failed to submit a proper motion for fees under Ark. R. Civ. P. 54(e).

Rule 54(e) provides for the method for filing claims for attorney's fees. The rule provides in pertinent part:

> (1) *Attorneys' Fees.* Claims for attorneys' fees and related nontaxable expenses shall be made by motion unless the substantive law governing the action provides for the recovery of such fees as an element of damages to be proved at trial.
>
> (2) Unless otherwise provided by statute or order of the court, the motion must be filed and served no later than 14 days after entry of judgment; *must specify the judgment and the statute or rule entitling the moving party to the award;* and must state the amount or provide a fair estimate of the amount sought. If directed by the court, the motion, shall also disclose the terms of any agreement with respect to fees to be paid for the services for which the claim is made.  [Emphasis added.]

The record reflects that the chancellor's order was entered on July 1, 1998, and that Boatmen's motion was filed on July 13, 1998. Thus, the motion was timely filed under the rule. The motion does not, however, recite the specific statute or rule entitling Boatmen's to the claimed fees. Crawford & Lewis asserts that Boatmen's failure to state any legal basis for the fees is fatal to its argument on appeal. We agree with Crawford & Lewis.

■ ■  The procedure established in Rule 54(e) is an attempt to address a recurrent source of litigation — disputes involving the award of attorney's fees. Subsection (e)(2) particu-

larly sets forth requirements that create uniformity in the way such claims must be addressed. It requires that the motion be filed within a specified time period and further requires that the legal basis for the claim be specified. This court has consistently held that in determining whether a statute's provisions are mandatory or merely directory, we adhere to the principle that those things which are of the essence of the thing to be done are mandatory, while those not of the essence are directory only. *Fulmer v. State*, 337 Ark. 177, 987 S.W.2d 700 (1999); *McElroy v. Grisham*, 306 Ark. 4, 810 S.W.2d 933 (1991); *Taggart & Taggart Seed Co., Inc. v. City of Augusta*, 278 Ark. 570, 647 S.W.2d 458 (1983). Clearly, the requirement that the motion contain the specific rule or statute providing for attorney's fees is the essence of the thing to be done by the rule. Accordingly, because Boatmen's failed to comply with the specific dictates of Rule 54(e)(2), we will not reach the merits of its argument on appeal.

Boatmen's second point on cross-appeal is more of a request than an argument. Indeed, Boatmen's states in its reply brief that it merely seeks this court's *confirmation* that the interest awarded by the chancellor on its counterclaim for disgorgement began to accrue at the time the order was entered. The order reflects that "the counterclaim by Boatmen's as Trustee for a judgment against Crawford & Lewis in an amount equal to the fees and expenses previously paid of $16,608.89 and *post judgment interest at the highest rate allowed by law* is hereby granted and such judgment is entered against Crawford & Lewis." (Emphasis added.) Because Boatmen's does not seek anything more than was received in the trial court, its argument is not a proper matter for cross-appeal. *See Aycock Pontiac, Inc. v Aycock*, 335 Ark. 456, 983 S.W.2d 915 (1998).