2009 Ark. App. 540

Jackson ROOP and Eva
Roop, Appellants,

v.

Mitchell COOK, Mitchell's 1st Quality,
L.L.C., Mitchell's 1st Quality Home
Movers, L.L.C., and Cook Hauling &
Excavating, L.L.C., Appellees.

No. CA 08–1441.

Court of Appeals of Arkansas.

July 1, 2009.

Paul A. Schmidt, Sr., Cabot, for appellants.

Paul Petty, Searcy, for appellees.

KAREN R. BAKER, Judge.

Appellants Jackson and Eva Roop appeal from the White County Circuit Court's granting of appellees' motion for a

directed verdict and from an order denying attorney's fees. On appeal, the Roops assert that the trial court erred in refusing to allow Mr. Roop to testify as to the amount of money recovered when the mobile home involved in this case was sold by sealed bid, thereby excluding admissible evidence relevant to the calculation of the damages sustained by the Roops; therefore, the Roops conclude, the court's granting of the directed verdict for failure to prove any damages over and above $3,000 is likewise reversible error. Second, the Roops assert that the trial court's denial of attorney's fees to them was error under the facts and circumstances of this case. We affirm on both points.

This case arises from a purchase agreement entered into on March 25, 2003, between Jackson and Eva Roop and Mitchell's 1st Quality, LLC, d/b/a Mitchell's 1st Quality Homes, LLC (Mitchell Homes) for the purchase of a Palm Harbour, Model 60A1, mobile home. The purchase price of the mobile home was $39,000. It was noted on the purchase agreement that the purchase price of $39,000 was paid in full on April 25, 2003. Per the terms of the contract, Mitchell Homes was to deliver and set up the mobile home, install air conditioning, install a runner in the perimeter, install interior carpet and sheet rock, install vinyl ends after delivery, repair insulation and the underbelly, install the electrical, plumbing, and appliances, and otherwise prepare the mobile home for habitation. The contract stated that Mitchell Homes would have the house insured until the date of delivery. Mitchell Homes hired appellee Mitchell's 1st Class Home Movers, LLC, and Cook Hauling and Excavating, LLC, to transport and set up the mobile home on the Roops' property.

On January 29, 2004, the Roops filed a complaint in White County Circuit Court against Mr. Cook, Mitchell Homes, Mitchell's 1st Class Home Movers, LLC, and Cook Hauling and Excavating, LLC. In the complaint, the Roops asserted claims of rescission, negligence, damages, and attorney's fees for the breach of contract. They also asserted claims for other incidental and consequential damages not to exceed $30,000. They asserted that some of the work for which they paid appellees would have to be redone, and they asked for a judgment in the amount of $3,250 to correct these errors. Mr. Cook and the other entities timely filed an answer to the complaint denying liability.

The matter proceeded to trial, and Mr. Roop testified as to the improper setup of the mobile home. First, he testified that the mobile home delivered by Mitchell Homes was not the mobile home contracted for in the purchase agreement. Mr. Roop also testified that the "setup was supposed to be according to Palm Harbour standards"; however, the "setup was not done according to what [Mr. Cook] agreed to." Specifically, Mr. Roop testified that the support columns "would not even match up" and that only the first set of support or runners was in place to support the mobile home. Thus, the mobile home was not "properly supported." Mr. Roop also testified that Mr. Cook had not replaced the missing insulation, as he had agreed to do, nor had he replaced the underbelly per their agreement. Moreover, a part of the electrical wiring was "hanging underneath the unit," causing high electric bills, and the flooring "squeak[ed]" and had "soft spots." The mobile home was also never "leveled." Mr. Roop testified that Mr. Cook assured him that this mobile home was in "good condition" and "in tip top shape;" however, Mr. Roop stated that he quickly got the impression that Mr. Cook knew that the mobile home was *not* in good condition.

Mr. Roop stated that he called Mr. Cook when he began encountering the problems with the mobile home setup. Mr. Cook went to the Roops' property on three separate occasions after the mobile home was delivered; however, Mr. Cook did nothing to repair any of the mobile home's defects. The Roops filed a complaint with the Mobile Home Commission and with the Arkansas Attorney General's Office, Consumer Protection Division. Those efforts, however, were unsuccessful, and the issues remained unresolved.

As a result, Mr. Roop contacted Billy Joe White to examine and inspect the mobile home. Mr. White's background included experience with factory warranty service on manufactured homes and experience selling manufactured homes, managing a sales lot, and working for nine years with the Arkansas Mobile Home Commission. Mr. White testified that when he examined the Roops' home, he discovered "some defects" in installation and also transportation damages to the frame and floor system. He also testified as to other observations he made, including the following: the roof joint was "gapped excessively" at the peak of the home, extra piers were placed underneath the sidewalls of the home in addition to those underneath the I-beams, there was no legitimate support foundation, there was extensive damage to the frame components underneath the home, there were loose electrical wires that should have been concealed in the sub-floor cavity and protected, the cross-over duct was not installed properly and was lying on the ground, and the house was not safely anchored because of the damage done to the frame. Mr. White's opinion was that "[t]he mobile home [was] not to code."

The Roops lived in the mobile home for approximately a year and a half; however, Mr. Roop feared that during a storm, the mobile home "would come apart like a peeled banana." Thus, Mr. Roop put the mobile home "up for a sealed bid, sold it, and moved to an apartment" because the "mobile home was not safe to live in." At that point, counsel for appellees objected to Mr. Roop's testimony as to the price for which he sold the mobile home. The trial court sustained the objection. Mr. Roop went on to testify that he sold the mobile home to the highest bidder and incurred moving expenses of approximately $1,500. He also testified that, although he did not have any documentation at trial, during the time he and Mrs. Roop lived in the mobile home, he paid contractors $3,000 to do repair work and finish out the work needed on the mobile home.

Billy Gilliam testified that his sister-in-law previously owned the mobile home at issue. He witnessed the delivery of the mobile home by the seller to his sister-in-law's property. Mr. Gilliam described the delivery event as follows: "It was delivered and it was wet and they needed a bulldozer to pull it into the place where they were going to set it up and the property's got a hill on it and the road's cut through the hill and around the curve and they hooked onto it and drug it up on one side of the hill where it was cut through the road and the back end was wedged on the other side of the road and the wheels [were] off the ground when they were dragging it with a bulldozer." He testified that he "could tell at the time that the unit had been damaged," and when his sister-in-law later complained about the damage she noticed to the flooring in the kitchen, attempts were made to repair it. Based on his experience as a welder, the repair work done on the underside of the home, which involved welding, was not quality work and in his opinion would cause problems when moving it in the future. Six or seven months after delivery, however, the

mobile home was repossessed from his sister-in-law's property.

Mr. David Hamilton testified that he was employed by Mitchell Homes and that he worked with Mr. Roop in preparing the contract. He stated that the contract terms indicated that first, the truck was to deliver the home to Mr. Roop's property and second, a crew would arrive to "block the house and tie it down." He further stated that the contract included air conditioner installation and installation of runners and perimeter, meaning that "the perimeter of the home would have exterior blocking." In an earlier deposition, Mr. Hamilton stated: "The home is a Palm Harbor [sic] home. It is a Sheetrock home. It has dry wall throughout most of it and it requires perimeter footing." He did not have knowledge of whether the perimeter footing "was actually done or not." The next item in the contract was "Trimont interior carpet & Sheetrock." He testified that Mitchell Homes has a "finish man" that routinely goes to the home after it is delivered and prepares it for the new owners. He finishes the Sheetrock by piecing it together and seams the carpet; however, Mr. Hamilton had no knowledge of whether or not this was done. And finally, he testified that the contract included an agreement "to repair installation in the underbelly."

At the close of the Roops' case, counsel for appellees moved for a directed verdict for Mr. Cook individually, on the basis that there was no evidence presented that he was individually liable, and for the remaining entities, on the basis that there had been no proof of damages. Appellees' counsel argued that the only amount of damages presented in the case was $3,000. Appellees acknowledged that there was testimony it had been sold and argued that the sale price was not the proper measure of damages. Counsel for the Roops argued that they were asking for a rescission of the entire contract. Roops' counsel argued there was testimony to show that he had performed his part of the contract but that the appellees had not. Appellees' counsel responded that rescission is not a proper remedy under these facts where the mobile home had been sold.

The court agreed that because the mobile home had been sold, rescission was not a proper remedy. The court stated in its ruling that the testimony as to damages was $3,000, and noted that since it was a breach of contract case, there could be some attorney's fees involved. At that point, appellees agreed to pay the Roops $3,000 in damages and asked that the entire case not be submitted to the jury. The court agreed, noting that the only other possible damages that could be collected were the attorney's fees. The court noted that attorney's fees could be awarded in a contractual relationship. At that point, counsel for the appellees agreed to pay $500 in attorney's fees.

After trial, the Roops' counsel filed a motion for attorney's fees in the amount of $8,200, and court costs and expenses in the amount of $3,470.90. Appellees responded by stating that the Roops' motion failed to comply with Rule 54(e)(2) of the Arkansas Rules of Civil Procedure in that it failed to state the statute or rule entitling the Roops to an award of attorney's fees; and by noting that reimbursement for expert witness fees and court reporter fees for depositions were not allowed; and by objecting to a portion of the charges for serving subpoenas twice.

On August 13, 2008, an order was entered in the proceedings. The order discharged Mitchell Cook individually of any liability, and based on the remaining defendants' consent and the evidence presented, judgment was entered jointly and

severally against the remaining defendants in the amount of $3,000.

On August 21, 2008, the court entered a letter opinion on the motion for attorney's fees awarding the Roops some of their costs but denying an attorney's fee because the Roops failed to state the specific statute or rule entitling them to such an award. On September 12, 2008, the Roops filed their initial notice of appeal. More than a month later, an order allowing recovery of costs but denying the motion for attorney's fees was entered. On November 4, 2008, the Roops filed their amended notice of appeal.

First, the Roops argue that "the trial court erred in refusing to allow Mr. Roop to testify as to the amount recovered when the mobile home involved in this case was sold by seal[ed] bid, thereby excluding from evidence relevant, admissible evidence as to the damages sustained by Mr. and Mrs. Roop, as a result, the directed verdict granted by the court for failure to prove any damages over and above $3,000 is likewise reversible error." The Roops contend that "this case is governed by the Uniform Commercial Code because the sale of a mobile home is, as a matter of law, a sale of goods as that term is defined by the Uniform Commercial Code." They assert that the UCC must be examined in order to determine how Mr. and Mrs. Roop could prove recoverable elements of damage. The Roops base their argument on certain provisions of the UCC, specifically Arkansas Code Annotated sections 4–2–706 (remedies for the seller of goods after default by the buyer under the contract for the sale of those goods) and 4–2–711 (remedies for the buyer of goods applicable when the seller fails to deliver the goods purchased or the buyer rightfully rejects or justifiably revokes acceptance with respect to goods). The Roops contend that upon proper revocation of the

buyer's acceptance, one measure of damages is the difference between the price paid and the amount received in a proper sale of the goods. Therefore, Mr. Roop's testimony concerning the sum of money he received when he sold the mobile home was relevant as to the damages, and the trial court erred in not allowing it.

Unfortunately, the Roops have failed to preserve for our review the issues now raised on appeal. It is well established that we will not consider an argument raised for the first time on appeal. *See Myers v. Ark. Dep't of Human Servs.*, 91 Ark.App. 53, 55, 208 S.W.3d 241, 242 (2005). Issues raised for the first time on appeal will not be considered because the trial court never had an opportunity to rule on them. *Norman v. Cooper*, 101 Ark.App. 446, 278 S.W.3d 569 (2008) (citing *Green v. State*, 365 Ark. 478, 231 S.W.3d 638 (2006)). A party cannot change the grounds for an objection or motion on appeal but is bound by the scope and nature of the arguments made at trial. *Id.* (citing *Lewis v. Robertson*, 96 Ark.App. 114, 239 S.W.3d 30 (2006)). Because the Roops' arguments regarding the UCC were not made below, we are precluded from reaching the merits now. *Id.*

In addition, the Roops did not proffer the testimony about the amount they received from the sale of the mobile home. To challenge a ruling excluding evidence, an appellant must proffer the excluded evidence so as to permit review of a trial court's decision, unless the substance of the evidence is apparent. *Nelson v. Stubblefield*, 2009 Ark. 256, 308 S.W.3d 586 (quoting *Duque v. Oshman's Sporting Goods Servs., Inc.*, 327 Ark. 224, 226, 937 S.W.2d 179, 180 (1997)). Because the Roops did not proffer the testimony, they are unable to challenge the trial court's ruling excluding the evidence on appeal.

■ For their second argument, the Roops contend that the trial court's denial of attorney's fees to the Roops was error. The Roops assert that the court simply chose form over substance when it denied attorney's fees because the motion did not contain the "magic words."

Arkansas Rule of Civil Procedure 54(e)(1) and (2) provides in pertinent part:

(1) *Attorneys' Fees.* Claims for attorneys' fees and related nontaxable expenses shall be made by motion unless the substantive law governing the action provides for the recovery of such fees as an element of damages to be proved at trial.

(2) Unless otherwise provided by statute or order of the court, the motion must be filed and served no later than 14 days after entry of judgment; *must specify the judgment and the statute or rule entitling the moving party to the award;* and must state the amount or provide a fair estimate of the amount sought. If directed by the court, the motion shall also disclose the terms of any agreement with respect to fees to be paid for the services for which the claim is made. [Emphasis added.]

The Roops admit that they did not comply with Rule 54(e) in that they did not specifically mention in their motion the statute entitling them to the award. Ark.Code Ann. § 16–22–308. Appellees cite *Crawford & Lewis v. Boatmen's Trust Co. of Arkansas, Inc.*, 338 Ark. 679, 1 S.W.3d 417 (1999). In that case, our supreme court held the following:

The record reflects that the chancellor's order was entered on July 1, 1998, and that Boatmen's motion was filed on July 13, 1998. Thus, the motion was timely filed under the rule. The motion does not, however, recite the specific statute or rule entitling Boatmen's to the claimed fees. Crawford & Lewis asserts

that Boatmen's failure to state any legal basis for the fees is fatal to its argument on appeal. We agree with Crawford & Lewis.

The procedure established in Rule 54(e) is an attempt to address a recurrent source of litigation-disputes involving the award of attorney's fees. Subsection (e)(2) particularly sets forth requirements that create uniformity in the way such claims must be addressed. It requires that the motion be filed within a specified time period and further requires that the legal basis for the claim be specified. This court has consistently held that in determining whether a statute's provisions are mandatory or merely directory, we adhere to the principle that those things which are of the essence of the thing to be done are mandatory, while those not of the essence are directory only. *Fulmer v. State*, 337 Ark. 177, 987 S.W.2d 700 (1999); *McElroy v. Grisham*, 306 Ark. 4, 810 S.W.2d 933 (1991); *Taggart & Taggart Seed Co., Inc. v. City of Augusta*, 278 Ark. 570, 647 S.W.2d 458 (1983). Clearly, the requirement that the motion contain the specific rule or statute providing for attorney's fees is the essence of the thing to be done by the rule. Accordingly, because Boatmen's failed to comply with the specific dictates of Rule 54(e)(2), we will not reach the merits of its argument on appeal.

*Crawford*, 338 Ark. at 689–90, 1 S.W.3d at 423–24. In the case at hand, the Roops admit that they failed to specify the legal basis for their claim for attorney's fees. Therefore, we cannot reach the merits of this argument on appeal.

Affirmed.

HART and ROBBINS, JJ., agree.