# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

———————

No. 01-1128

———————

Steve Johnson, PH.D,     *
     *
     Appellant,     *
     *    Appeal from the United States
    v.      *    District Court for the
     *    Western District of Arkansas.
Bank of Bentonville,     *
     *
     Appellee.     *

———————

Submitted: September 10, 2001

Filed: October 4, 2001

———————

Before BOWMAN, HEANEY and BYE, Circuit Judges.

———————

HEANEY, Circuit Judge.

Appellant Steve Johnson brings this suit to challenge the constitutionality of section 731 of the Gramm-Leach-Bliley Financial Modernization Act of 1999 ("section 731"), codified at 12 U.S.C. § 1831u(f). Section 731 overrides the interest rate limitations mandated by Article 19, Section 13 of the Arkansas State Constitution by allowing banks chartered in Arkansas to charge the same rate of interest as national banks operating branches within the state. Johnston contends that by enacting section 731, Congress violated the principles of dual sovereignty by overriding Arkansas' state constitution, and exceeded its power under the Commerce Clause of the United States

Constitution. The District Court[1] granted the Bank of Bentonville's motion for summary judgment and dismissed the complaint. We affirm.

## I.    BACKGROUND

Prior to the enactment of section 731, all banks chartered in Arkansas were subject to the interest rate constraints contained within Article 19, Section 13, of the Arkansas State Constitution, as modified by Amendment 60. In contrast, national banks chartered in states other than Arkansas, but operating branches within Arkansas, were allowed to charge interest at a rate allowed by the laws of the state where the bank originated. 12 U.S.C. § 85. As a result, national banks operating branches within Arkansas were able to charge rates of interest greater than those charged by banks chartered in Arkansas. It is this discrepancy that led Congress to enact section 731.

In part, section 731 provides that:

> In the case of any State that has a constitutional provision that sets a maximum lawful annual percentage rate of interest on any contract at not more than 5 percent above the discount rate for 90-day commercial paper in effect at the Federal reserve bank for the Federal reserve district in which such State is located . . . upon the establishment in such State of a branch of any out-of-State insured depository institution . . . the maximum interest rate . . . that may be charged . . . shall be equal to no more than the greater of –

> (A) the maximum interest rate . . . that may be charged . . . under the constitution or any statute or any other law of the home State of the out-of-State insured depository institution establishing any such branch . . . ; or

---

[1]The Hon. Franklin Waters, United States District Judge for the Western District of Arkansas.

(B) the maximum rate or amount of interest . . . that may be charged . . . by a State insured depository institution chartered under the laws of such State or a national bank . . . whose main office is located in such State.

12 U.S.C. § 1831u(f).  In effect, this amendment provides loan pricing parity between local and national banks by allowing local banks to charge interest rates that are comparable to those imported by branches of national banks.

## II.    DISCUSSION

Section 731 preempts state law without violating the principles of dual sovereignty.  In Gregory v. Ashcroft, the Supreme Court explained that, pursuant to the power derived from the Supremacy Clause, "[a]s long as it is acting within the powers granted it under the Constitution, Congress may impose its will on the States . . . [and] may legislate in areas traditionally regulated by the States."  501 U.S. 452, 460 (1991).  The Court also stated that, "if Congress intends to alter the 'usual constitutional balance between the States and the Federal Government,' it must make its intention to do so 'unmistakably clear in the language of the statute.'"  Id.  (citations omitted). Here, the clear language of section 731 leaves no doubt that Congress intended to preempt state law.

Moreover, Congress did not exceed its power under the Commerce Clause by enacting section 731.  The Commerce Clause permits Congress "to regulate those activities having a substantial relation to interstate commerce, . . . i.e., those activities that substantially affect interstate commerce."  U.S. v. Morrison, 529 U.S. 598, 609 (2000)(citations omitted).  Prior to the enactment of section 731, banks operating within Arkansas were placed at a competitive disadvantage as compared to national banks because of their inability to charge equivalent interest rates, thereby affecting the flow

of currency between Arkansas and other states. It was within Congress's power under the Commerce Clause to eliminate this disparity by enacting section 731.

Accordingly, the judgment is affirmed.

A true copy.

Attest:

CLERK, U. S. COURT OF APPEALS, EIGHTH CIRCUIT.