# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 02-3314

_____

Ross M. Jessup,                          *
                                         *
          Appellant,                     *
                                         *   Appeal from the United States
     v.                                  *   District Court for the
                                         *   Western District of Arkansas.
Pulaski Bank,                            *
                                         *
          Appellee.                      *

_____

Submitted: April 15, 2003
Filed:  May 5, 2003

_____

Before MORRIS SHEPPARD ARNOLD, BYE, and RILEY, Circuit Judges.

_____

RILEY, Circuit Judge.

Ross M. Jessup (Jessup) brought a usury action against Pulaski Bank and Trust Company (Pulaski Bank), claiming Pulaski Bank violated Article 19, Section 13 of the Arkansas Constitution and Texas law when it charged 18.5 percent interest on Jessup's credit card indebtedness. The district court[1] granted summary judgment for Pulaski Bank, and Jessup appeals. We affirm.

_____

[1]The Honorable Jimm Larry Hendren, Chief Judge, United States District Court for the Western District of Arkansas.

This appeal turns on the interpretation of section 731 of the Gramm-Leach-Bliley Financial Modernization Act of 1999, 12 U.S.C. § 1831u(f), a federal statute affecting state law interest rate caps on loans made by federally insured state banks. Section 1831u(f) allows an Arkansas bank to charge interest at a rate allowed by the state of any out-of-state bank with a branch office in Arkansas, except when the Arkansas bank has "made" the loan "in any State other than [Arkansas]." See 12 U.S.C. § 1831u(f)(2).

Pulaski Bank is a federally insured bank chartered under Arkansas law, with its main office in Little Rock. Its only branch offices are in Little Rock and North Little Rock. Pulaski Bank issues credit cards from its credit card headquarters in Little Rock. Applications are received, processed, and approved or denied in Little Rock, credit card applicants are notified from Little Rock of the decision whether to extend credit, and credit card customers in all fifty states mail their payments to Little Rock.

Jessup resided in Texas at all times relevant to the action, and Pulaski Bank solicited his credit card business there. A credit card application was mailed from Little Rock to Jessup's residence in Texas, and Jessup mailed the completed application to Pulaski Bank's Little Rock post office box. After Pulaski Bank approved the application, a letter was sent from Little Rock notifying Jessup of the approval. The credit card application, as well as the agreement accompanying Jessup's card, disclosed an 18.5 percent interest rate; stated that all credit card advances would be loans made in Arkansas; and noted that the loans would be governed by Arkansas and federal law, including section 1831u(f). Jessup used his card solely in Texas.

In the summary judgment proceedings below, the parties disagreed as to whether Arkansas, Texas, or Alabama interest-rate law governed the agreement. The 18.5 percent interest rate was usurious under Arkansas and Texas law, but not under

Alabama law. Section 1831u(f) implicates Alabama law because Regions Bank, a federally insured bank chartered under Alabama law, with its home office in Alabama, maintains branch offices in Arkansas. Therefore, Arkansas banks may, in certain circumstances, charge the interest rate allowed by Alabama law. This rule allows Arkansas banks to compete with out-of-state banks having branches in Arkansas.

The district court granted Pulaski Bank's motion for summary judgment. The court concluded section 1831u(f) applied, and under section 1831u(f) Pulaski Bank could charge any interest allowed by the home state of any out-of-state bank with a branch in Arkansas. Because an Alabama bank had a branch in Arkansas, and because Alabama allows interest at any rate agreed by the parties, the court concluded Pulaski Bank could charge the agreed-upon rate of 18.5 percent. The court disagreed with Jessup who claimed the loan had been made in Texas and was not governed by section 1831u(f). The court concluded the loan had been made in Arkansas.

We review de novo the district court's grant of summary judgment. See TeamBank, N.A. v. McClure, 279 F.3d 614, 617 (8th Cir. 2002). Initially, we conclude that federal rather than state choice-of-law principles govern the determination of Congress's intent with regard to section 1831u(f). See Miss. Band of Choctaw Indians v. Holyfield, 490 U.S. 30, 43, 49-52 & nn. 26, 27 (1989) (meaning of federal statute is federal question, and absent plain indication to contrary, courts presume Congress did not intend to make application of federal statute dependent on state law).

The statute does not define the term "made," and no cases have interpreted the term. However, the Office of the Comptroller of the Currency (OCC) issued an opinion letter in August 2001 addressing the issue. The opinion letter states that prior OCC letters interpreting the related Riegle-Neal Interstate Banking and Branching

Efficiency Act of 1994[2] had advised that a loan was "made" by a bank's out-of-state branch if the loan was approved, credit was extended, and loan proceeds were disbursed, out of state. The August 2001 OCC letter concludes that in applying section 1831u(f),

> an Arkansas bank [cannot] rely on section [1831u(f)] and Alabama interest rate law where the loan is made by an out-of-state branch of the Arkansas bank. Thus, an Arkansas bank "making a loan," as defined for purposes of the Riegle-Neal Act, at a branch in another state would be subject to that other state's limitations on interest. . . . [The Arkansas bank in question] does not operate any branches outside the state of Arkansas. Thus, [the bank] may impose interest charges in accordance with Alabama interest authority without regard to where the borrower resides.

This letter is entitled to <u>Chevron</u>[3] deference, which requires courts to find administrative decisions controlling unless they are arbitrary, capricious, or manifestly contrary to the statute at issue. <u>See</u> <u>TeamBank</u>, 279 F.3d at 619 (decisions of Comptroller of Currency merit <u>Chevron</u> deference even when no administrative formality was afforded). The letter indicates that a loan is made at the location of the branch that approves the loan, extends credit, and disburses the funds. All of Pulaski Bank's branches were in Arkansas, and applying the OCC letter criteria, we agree with the district court that Jessup's loan was "made" in Arkansas and that section 1831u(f)(1), therefore, covered Pulaski Bank's extension of credit to Jessup.

Accordingly, the 18.5 percent interest rate the parties agreed to was not usurious, because it was permitted under Alabama law. We affirm.

---

[2]Pub. L. 103-328, 108 Stat. 2338 (Sept. 29, 1994).

[3]<u>Chevron U.S.A., Inc. v. Natural Res. Defense Council, Inc.</u>, 467 U.S. 837 (1984).

-4-

A true copy.

Attest:

      CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.