The Honorable Walls McCrary State Representative
319 West Academy Street Lonoke, Arkansas 72086-3104
Dear Representative McCrary:
I am writing in response to your request on behalf of a constituent for an opinion on the following questions:
 1. What is the maximum annual interest rate that can be charged on a Contract for Sale of lots and/or land?
 2. What is the maximum annual interest rate that can be charged on a Contract for Sale of lots and/or land together with a house placed on it?
 3. What formula is used to determine the correct amount of interest?
Your request provides no additional context or facts underlying your questions.
RESPONSE
As an initial matter, I note that I am unable to provide definitive answers to your first two questions, owing to their generality. The application of Arkansas law limiting interest rates and of federal law preempting the state limits depends upon the identity of the lender, the nature and time of the contract, and numerous factors relating to the lender and the contract. Without access to all the relevant facts, I *Page 2 
can provide only general answers to your first two questions, along with a discussion of law that may be applicable to fact situations like those that may underlie the questions.[1]
In general, with respect to your first two questions, it is my opinion that Amendment 60 (as defined below) may govern the contracts and establish the maximum rate of interest payable thereon. Depending on the prevailing facts, however, it is possible that a federal law will apply to preempt the operation of Amendment 60 and thereby establish a higher maximum rate or permit the parties to contract for any rate desired. Although a general review of all federal law that may preempt Arkansas usury law is not a practicable undertaking in an Attorney General's opinion, I will discuss briefly those federal laws that I believe most likely to be implicated by the fact situations that may underlie your first two questions.
With respect to your third question, it is my opinion that there is no single formula required to be used to determine the amount of interest payable on a contract subject to Amendment 60's interest rate limitation.
Question 1: What is the maximum annual interest rate that canbe charged on a Contract for Sale of lots and/or land?
The Arkansas Constitution places limits on interest rates on contracts subject to Arkansas law, providing:
 § 13. Maximum lawful rates of interest.
 (a) General Loans:
 (i) The maximum lawful rate of interest on any contract entered into after the effective date hereof shall not exceed five percent (5%) per annum above the Federal Reserve Discount Rate at the time of the contract.
 (ii) All such contracts having a rate of interest in excess of the maximum lawful rate shall be void as to the unpaid interest. A person who *Page 3 
has paid interest in excess of the maximum lawful rate may recover, within the time provided by law, twice the amount of interest paid. It is unlawful for any person to knowingly charge a rate of interest in excess of the maximum lawful rate in effect at the time of the contract, and any person who does so shall be subject to such punishment as may be provided by law.
 (b) Consumer Loans and Credit Sales: All contracts for consumer loans and credit sales having a greater rate of interest than seventeen percent (17%) per annum shall be void as to principal and interest and the General Assembly shall prohibit the same by law.
 (c) Definitions: As used herein, the term:
 (i) "Consumer Loans and Credit Sales" means credit extended to a natural person in which the money, property, or service which is the subject of the transaction is primarily for personal, family or household purposes.
 (ii) "Federal Reserve Discount Rate" means the Federal Reserve Discount Rate on ninety-day commercial paper in effect in the Federal Reserve Bank in the Federal Reserve District in which Arkansas is located.
 (d) Miscellaneous:
 (i) The rate of interest for contracts in which no rate of interest is agreed upon shall be six percent (6%) per annum.
 (ii) The provisions hereof are not intended and shall not be deemed to supersede or otherwise invalidate any provisions of federal law applicable to loans or interest rates including loans secured by residential real property.
 (iii) The provisions hereof revoke all provisions of State law which establish the maximum rate of interest chargeable in the State or which are otherwise inconsistent herewith.
Ark. Const. art. 19, § 13, as amended by Ark. Const. amend. 60 ("Amendment 60").
Because the "Federal Reserve Discount Rate," as referred to in subsection (a)(1) of Amendment 60, is no longer published or in use, the Federal Reserve's primary credit rate is now used in determining the maximum interest rate allowable under subsection (a) of Amendment 60. See Pakay v. Davis,367 Ark. 421, 241 S.W.3d 257 (2006). The primary credit rate changes from time to time. The prevailing primary credit rate may be determined by reference tohttp://www.frbdiscountwindow.org/. *Page 4 
The maximum interest rate allowable on a contract governed by subsection (a) of Amendment 60 is determined by adding five percent (5.0%) to the primary credit rate as of the date of the contract.
Subsection (b) of Amendment 60 merely caps interest rates on consumer loans and credit sales at 17% during periods when the rate determined under subsection (a) is higher than 17%. Subsection (b) never allows interest rates on consumer loans or credit sales to be higher than the rate determined under subsection (a). The maximum interest rate on a consumer loan or credit sale subject to Amendment 60 is always, therefore, the lesser of 17% or the rate determined under subsection (a). See Bishop v. Linkway Stores,Inc., 280 Ark. 106, 655 S.W.2d 426 (1983).
Amendment 60 contemplates that federal law may in some instances preempt the interest rate limitations of subsections (a) and (b).See Ark. Const. art. 19, § 13(d)(ii). Several federal laws do in fact preempt Amendment 60 in certain circumstances.
Absent the application of a federal law preempting Amendment 60, the maximum interest rate on the contract at issue[2] will be a rate equal to the sum of five percent (5.0%) per annum plus the rate per annum established by the Federal Reserve as the primary credit rate prevailing on the date of the contract; provided, that if the contract at issue is a consumer loan or credit sale, as defined in subsection (c)(i) of Amendment 60, the maximum rate will be the lesser of the rate just described or 17%. *Page 5 
It is quite possible, however, that either of two federal preemption provisions might apply here.
First, if the lender is a bank or savings association whose deposits are insured by the Federal Deposit Insurance Corporation, the parties may, in my opinion, contract for interest at any rate, unconstrained by Amendment 60 or any other law limiting interest rates.[3]
Under section 731 of the Gramm-Leach-Bliley Financial Modernization Act of 1999, codified in relevant part at 12 USC § 1831u(f)(1)(A), an insured depository institution whose home state is Arkansas[4] may make a loan in Arkansas at an interest rate not in excess of the rate that may lawfully be charged under the laws of any state that is the home state of an insured depository institution that has established a branch in Arkansas. The statute provides, in other words, that Arkansas banks may examine the home state laws of every bank that branches into Arkansas, and charge interest at the highest rate allowed by any one of those laws.
In Jessup, supra note 3, the court noted that at least one out-of-state bank had established a branch in Arkansas, and that the laws of its home state permitted parties to contract for interest at any rate, without a maximum limit.[5] As a result, theJessup court stated, the Arkansas state bank could also contract for interest at any rate, without limit, on loans made in Arkansas.
Assuming the conditions cited by the Jessup court are still prevailing (i.e., that there is in existence in Arkansas on the date of the contract a branch of an out-of-state bank whose home state law permits parties to agree to interest at any rate), *Page 6 
Arkansas state banks and national banks having their main offices in Arkansas are not generally subject to any interest rate limitations on loans made in Arkansas.
The constitutionality of 12 USC § 1831u(f)(1)(A) was upheld inJohnson v. Bank of Bentonville,269 F.3d 894 (8th Cir. 2001).
The second federal law that may have preemptive effect is one passed by Congress just last year. In 2009, Congress enacted the Supplemental Appropriations Act, 2009, Pub.L. No. 111-32. Section 504 thereof, codified as12 USC § 1831u(f)(1)(B), temporarily preempts Amendment 60 and establishes a maximum lawful rate of interest with respect to contracts made in the State of Arkansas and involving lenders other than insured depository institutions.[6] For contracts consummated during the period June 24, 2009 to December 31, 2010, any such lender operating in the State of Arkansas may charge interest at the rate determined under Amendment 60, or at 17% per annum, whichever is greater. See 12 USC § 1831u(f)(1)(B), 12 USC § 1831u note. Unless reenacted by Congress, this law will expire, therefore making Amendment 60 once again applicable, beginning on January 1, 2011.
I am not aware of any other federal law that would be likely to preempt the operation of Amendment 60 with respect to a contract relating to non-residential real property, the subject of the contract in your first question.
Question 2: What is the maximum annual interest rate that canbe charged on a Contract for Sale of lots and/or land together witha house placed on it?
The fact that a residence is a part of the real property securing the debt does not alter the applicability or operation of either12 USC § 1831u(f)(1)(A) or 12 USC § 1831u(f)(1)(B), discussed above.
The presence of a house on the property may, however, implicate other federal preemption statutes. For example, FHA and VA loans are not subject to Arkansas usury law. See 12 USC § 1735f-7;38 USC § 3728. In addition, certain other *Page 7 
federally-related loans secured by first mortgage liens on residential real property are exempt from state usury limitations.See 12 USC § 1735f-7a.
There are several other federal statutes that preempt state usury limitations, or establish maximum interest rates for particular types of loans, but they appear to be very unlikely to apply to the loans at issue in the first two questions of your request.See, e.g., 15 USC §§ 631 et seq. (establishing the Small Business Administration and imposing interest rate limitations on some small business loans); 38 USC § 3745 (regulating interest rates on loans to veterans' small businesses). The foregoing is not an exhaustive list of federal law that may affect the application of Amendment 60 in a particular case.
It is my opinion that unless one of the foregoing federal statutes applies, the maximum rate of interest on the contract at issue in your second question will be a rate equal to the sum of five percent (5.0%) per annum plus the rate per annum established by the Federal Reserve as the primary credit rate prevailing on the date of the contract; provided, that if the contract is a consumer loan or credit sale, the maximum interest rate will be the lesser of the rate just described or 17%.
Question 3: What formula is used to determine the correctamount of interest?[7]
In my opinion, there is no single required or designated computation method to be used to determine the amount of interest on a contract that is subject to the limitations of Amendment 60.
The Supreme Court of Arkansas has interpreted Amendment 60 and its predecessor provision as referring to simple interest.See, e.g., McElroy v. Grisham,306 Ark. 4, 13, 810 S.W.2d 933 (1991); United Built Homes v.Elder, 272 Ark. 496, 615 S.W.2d 367 (1981); cf. Cagle v. BoyleMtg. Co., 261 Ark. 437, 549 S.W.2d 474 (1977) (contract bearing interest at stated rate equal to maximum lawful rate, compounded monthly, resulted in simple interest rate in excess of maximum lawful rate and was usurious).
The use of any one of four methods of computing simple interest is permissible under Arkansas usury law. See McElroy at 13. The methods are known as ordinary *Page 8 
interest, exact day interest, bank interest, and discount. SeeMartin's Mobile Homes v. Moore,269 Ark. 375, 377-379, 601 S.W.2d 838 (1980), quoting Thorndike Encyclopedia of Banking and Financial Tables (1973), p. xiii,and citing A.C.A. § 4-57-101 (Repl. 2001) (then codified as Ark. Stat. Ann. 68-605).
Assistant Attorney General J. M. Barker prepared the foregoing opinion, which I hereby approve.
Sincerely,
DUSTIN McDANIEL Attorney General
DM:JMB/cyh
[1] You may find it helpful in considering these issues to refer to Kenneth E. Galchus, et al., A History of Usury Law in Arkansas:1836-1990, 12 U. Ark. Little Rock L. J. 695 (1989-90), and Kenneth E. Galchus Ashvin Vibhakar, A Continuing History ofArkansas's Usury Law: On the Verge of Extinction?, 25 U. Ark. Little Rock L. Rev. 819 (2003).
[2] I assume for purposes of this opinion that the contract at issue in your request is subject to and governed by Arkansas law, as opposed to the laws of some other state. It should be noted that parties to a contract may in some circumstances elect the application of the laws of another state with respect to interest rate limitations, notwithstanding the contract's relationship to the State of Arkansas. See, e.g., Cooper v.Cherokee Village Dev. Co., Inc.,236 Ark. 37, 364 S.W.2d 158 (1963) (New York law governed debt secured by real property located in Arkansas); National SuretyCorp. v. Inland Properties, Inc.,286 F. Supp. 173 (E.D. Ark. 1968), aff'd,416 F.2d 457 (8th Cir. 1969) (New York law governed note and mortgage on real property located in Arkansas). Choice of law provisions in a contract are by no means always enforceable, however. There must be a substantial connection between the contract and the state whose laws are chosen. See, e.g., Cooper at 44. Even if such a connection exists, a choice of law provision will not be enforceable if usury is involved and the provision is a sham to avoid the application of Arkansas law. See, e.g., Grogg v. ColleyHome Center, Inc., 283 Ark. 120, 671 S.W.2d 733 (1984). Additionally, a choice of law provision will not be enforced where application of the designated state's law would violate the fundamental public policy of the state with the most significant relationship to the transaction. See, e.g., Aldens,Inc. v. Miller, 610 F.2d 538 (8th Cir. 1979) (Illinois mail-order credit provider could be subjected to Iowa Consumer Credit Code despite provision in credit agreement stating that it was an Illinois contract governed by Illinois law).
[3] I assume for purposes of this opinion that the loan at issue in your request, if made by an insured depository institution, is made in Arkansas for purposes of 12 USC § 1831u(f)(2). SeeJessup v. Pulaski Bank, 327 F.3d 682, 684-5 (8th
Cir. 2003), and the authority cited therein regarding the question of where a loan is made for such purposes.
[4] A national bank's home state is the state in which its main office is located. A state bank's home state is the state by which the bank is chartered. See 12 USC § 1831u(g)(4). I assume for purposes of this opinion that the lender contemplated by your request is either an insured depository institution whose home state is Arkansas, or is not an insured depository institution at all. I do not consider herein what interest rate limitations, if any, apply to an insured depository institution whose home state is not Arkansas.
[5] Specifically, the Jessup court referred to Regions Bank, an Alabama state bank, as the out-of-state bank which had established a branch in Arkansas, and to Alabama law, which, according to the court, permitted parties to contract for interest at any rate, without a maximum limit.
[6] The provision establishes a maximum interest rate that may be charged by "any nondepository institution operating in [the] State [of Arkansas]. . . ." See 12 USC § 1831u(f)(1)(B). The term "nondepository institution" is not defined. The provision contains a statement of its purposes, including "to facilitate interstate commerce generally, including consumer loans, in the case of anyperson or governmental entity (other than a depository institution . . .)." See12 USC § 1831u(f)(1)(B)(ii) (emphasis supplied). Given such statement of legislative intent, I cannot determine with certainty whether the provision preempts application of Amendment 60 with respect to contracts involving individuals (i.e., natural persons) as lenders.
[7] I interpret this question to be directed to the computation of the amount (in dollars) of interest on a contract, rather than the determination of the rate (in percentage terms) of interest thereon. The determination of the maximum lawful interest rate is discussed in response to your first two questions.